FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Fort Myers Division

2011 APR -4  PM 3: 02

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

MINERALS DEVELOPMENT & SUPPLY
COMPANY, INC., KENIN L. EDWARDS
JAMES R. COTE, JR.

Plaintiffs/Petitioners,

Case No. _____

-vs-

SUPERIOR SILICA SANDS, LLC

2: __11__-c_V_- _196_-FtM-365R

Defendant/Respondent,

---

### PETITION TO VACATE ARBITRATION AWARD

Plaintiffs/Petitioners, Minerals Development & Supply Company, Inc., ("MDSC"), Kenin Edwards, and James R. Cote, Jr. by their counsel, Fowler, White, Boggs, P.A., and Konicek & Dillon and Howard, Solochek & Weber, S.C, hereby move the Court for an order vacating the alleged decision of the arbitration panel and the alleged arbitration award entered on January 7, 2011. In support if their motion, Plaintiffs/Petitioners state as follows:

### PARTIES AND BACKGROUND

1.      MDSC and Superior Silica Sands, LLC ("Superior Silica") entered into a contract (the "Original Contract") which contained an arbitration provision. See Contract attached and incorporated by reference herein as Exhibit 1. Superior Silica terminated the contract on August 1, 2009. See Cover Letter attached and incorporated by reference herein as Exhibit 2. The dispute regarding the termination of the Original Contract resulted in the Arbitration Proceeding in Dane County, Wisconsin, entitled Minerals Dev. & Supply Co. v. Superior Silica Sands, LLC AAA Arbitration No. 51 198 1095 09 (the "Arbitration Proceeding").

1

2.     MDSC and Superior entered into a Settlement Agreement (the "Settlement Agreement") which settled the dispute as to Superior's termination of the contract and the Arbitration Proceeding was dismissed by the Arbitration Panel.  See Settlement Agreement attached and incorporated by reference herein as Exhibit 3. The Settlement Agreement is a final and binding contract between MDSC and Superior.  This Settlement Agreement is silent as to arbitration (i.e. there is no agreement to arbitrate contained in the Settlement Agreement).[1]  The Settlement Agreement makes no reference to the terminated Original Contract.  The Settlement Agreement is collateral to the terminated Original Contract, it is a separate and distinct contract, and therefore the Arbitration Panel erred when it relied upon the terminated Original Contract to determine whether the subsequent dispute arising under the Settlement Agreement is arbitrable.

3.     *After* the Settlement Agreement was reached, and the Arbitration Proceeding concluded, MDSC learned certain facts, as pled in its Second Amended Complaint filed in the District Court, which formed the basis for causes of action for fraudulent inducement against Hunton & Williams, LLP ("Hunton"), Insight Equity Holdings, LLC, Insight Equity, LP (collectively, "Insight Equity") and Superior Silica Sands, LLC ("Superior").  MDSC thereafter alleged in its Second Amended Complaint that it was fraudulently induced by Hunton, Insight Equity and Superior to enter into the Settlement Agreement.  Immediately after MDSC filed its Motion for Leave, Superior Silica asked the Arbitration Panel to reconvene in order to enforce the Settlement Agreement.  The Arbitration Panel who presided over the contract dispute did indeed reconvene.

4.     At each step of the "new proceedings" MDSC objected to the actions of the Arbitration Panel.  MDSC objected to Superior's initial request to reconvene the Arbitration

---

[1] It is important to note that Superior's counsel drafted the Settlement Agreement without the aid of MDSC or its counsel, therefore any interpretation should be construed against Superior.

Panel by putting the Panel on notice that the same issues were pending before the District Court. See Letter dated November 2, attached and incorporated by reference herein as Exhibit 4. MDSC, by counsel, then sent a letter to the Arbitration Panel setting forth the objection to further proceedings by the Panel and putting the Panel on notice that the issue was squarely before the District Court. See Letters dated November 5, 2010 and November 8, 2010 attached and incorporated by reference herein as Exhibit 5. Days later, MDSC, by counsel, filed a Motion to Stay the Arbitration Proceedings in the newly re-convened Arbitration. See Motion attached and incorporated by reference herein as Exhibit 6. After Judge Myse of the Arbitration Panel issued a Supplemental Decision on November 23, 2010, attached and incorporated by reference herein as Exhibit 7, MDSC by counsel sent a letter objecting again to the actions of the Arbitration Panel. See Letter attached and incorporated by reference herein as Exhibit 8.

5.     Despite MDSC's continued objections, the Panel set an evidentiary hearing to determine the fraudulent inducement claim MDSC had previously filed in the Western District to be held in Ft. Myers, Florida, on an expedited basis, and after said ex parte hearing issued a decision and arbitration award which is the subject of this Motion. Again, MDSC objected to the date of the hearing, the location of the hearing (Fort Myers, Florida), the inability to conduct discovery, and the jurisdiction of the Arbitration Panel to hold the hearing. See emails dated November 25, 2010, December 1, 2010 and letter dated December 3, 2010 attached and incorporated by reference herein as Exhibit 9.[2]  MDSC objected to the Arbitration Panel awarding fees to Superior and restated MDSC's objection to the jurisdiction of the Arbitration Panel and, finally, MDSC objected to the Arbitration Panel entering any award relating to the December 4, 2010 hearing. See emails and letters dated December 20, 2010, December 21,

---

[2] Despite the Arbitration Panel's comments to the contrary, MDSC continually objected to all aspects of the December 4, 2010 Arbitration hearing.

2010, December 22, 2010 and December 28, 2010 attached and incorporated by reference herein as Exhibit 10.

6.     Despite the repeated objections of MDSC and its non-participation in the December 4, 2010 hearing that was conducted in Fort Myers, Florida, the Arbitration Panel held a hearing (without authority) and entered an award in favor of Superior and against MDSC.

## JURISDICTIONAL STATEMENT

7.     This Court has original jurisdiction in this matter, pursuant to 28 U.S.C. §1332(a) because the matter in controversy is greater than $75,000 and the parties are citizens of different states.

8.     Plaintiff MDSC is an Illinois corporation with offices located in Chicago, Illinois at 2152 W. Roscoe Street, Chicago, Illinois 61618.  Plaintiff Kenin Edwards is an adult resident of the State of Illinois, residing at 2899 Bartruff Lane, Pekin, Illinois 61554.  Plaintiff James R. Cote, Jr. is an adult resident of the State of Illinois, residing at 2152 W. Roscoe Street, Unit 1 Chicago, Illinois 60618

9.     Defendant Superior Silica Sands, LLC is a Texas limited liability corporation with offices located Southlake, Texas.  The members of Superior Silica Sands, LLC, Victor Vescovo and Ted Beneski, are residents of the State of Texas.

10.     The amount in controversy in this matter is greater than $75,000.  See Arbitration Award attached as Exhibit 11 to Motion to Vacate (Arbitration Award is $284,420.95 plus sanctions, costs and arbitration fees).

11.     Section 10 of the Federal Arbitration Act provides that an arbitration award may be vacated by the United States court in and for the district wherein the award was made upon application of any party. 9 U.S.C. § 10(a).

4

12.    On December 4, 2010, the functo officio arbitration panel conducted a one day hearing in Fort Myers, Florida notwithstanding Plaintiff's repeated objections. Thirty-four days later the arbitration panel executed an alleged arbitration award in Florida where the arbitration panel members reside in the winter.

13.    "Where the arbitrator's award "was made" is not necessarily the location where the arbitrator signed or posted the decision. Instead, the courts, in decisions where an award "was made," will consider not only where the award was actually written or posted, but which locale has had the most significant contacts with the contract to arbitrate, the issues in dispute, and the resolution of those issues, and will also evaluate which jurisdiction has had the greatest involvement with the parties and the action. Unless the courts recognize a clear rule about laying venue where the arbitration is held, venue would be left simply to the serendipity of the arbitrator's choice of the place where he will sign and mail his decision." The law states that jurisdiction belongs in the district "within which such award was *made*." 9 U.S.C. § 9 (1982) (emphasis added). The Act does not state that jurisdiction belongs where the award was "written" or "filed." Motion Picture Laboratory Technicians Local 780, I.A.T.S.E v. McGregor & Wenier, Inc., 804 F2d 16, 18 (2nd Cir. 1986); Central Valley Typographical Union, No. 46 v. McClatchy Newspapers, 762 F.2d 741, 744 (9th Cir. 1985).

14.    The location of the hearing of the instant dispute was in Fort Myers, Florida, Superior presented evidence in Florida and the arbitrators executed the alleged award while in Florida. The alleged award "was made" in Fort Myers, Florida. Accordingly, this Court has subject matter jurisdiction to vacate the Arbitration Award.

## STANDARD TO VACATE ARBITRATION AWARD

15.    Section 10 of the Federal Arbitration Act provides that an arbitration award may

be vacated when (i) where the award was procured by corruption, fraud, or undue means; (ii) where there was evident partiality or corruption in the arbitrators, or either of them; (iii) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (iv) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

16.     An arbitrator exceeds his powers and award must be overturned when the arbitrator demonstrates perverse misconstruction or positive misconduct, when the arbitrator manifestly disregards the law, when the award is illegal, or when the award violates a strong public policy. Racine County v. International Association of Machinists and Aerospace Workers Dist. 10 751 N.W.2d 312 (Wis., 2008).[3]  A party who does not participate in arbitration proceedings may raise issue of arbitrability in motion to vacate arbitration award." Scholl v. Lundberg, 504 N.W.2d 115, 117-118, 178 Wis.2d 259, 2983. An arbitration award should be vacated when they exceed what was permissible in the contract providing for arbitration. Lukowski v. Dankert 515 N.W.2d 883 (Wis., 1994). An arbitrator's award must be vacated where it was procured by corruption, fraud or undue means.

17.     Further, an arbitration award can be challenged if the arbitrators, in conducting hearings and making an award, exceed the power and authority given to them. *Id.* This power and authority of the arbitrators is wholly dependent upon the terms of the agreement of the parties. *Id.*   The arbitrators cannot validly determine a dispute if they violate or act inconsistently with the terms of the submission. Sley System Garages v. Transport Workers Union of America, AFL-CIO, Local 700, 406 Pa. 370, 374, 178 A.2d 560, 561 (1962); Giant

---

[3] The Original Contract had a choice of law provision, that being Wisconsin law.

Markets, Inc. v. Sigma Marketing Systems, Inc.,313 Pa.Super. 115, 122, 459 A.2d 765, 768

(1983). See also: Gaslin, Inc. v. L.G.C. Exports, Inc.,334 Pa.Super. 132, 139-140, 482 A.2d

1117, 1121 (1984) ("although the arbitrator is the final judge of law and fact, his power has not

been extended to the degree that he may determine his own jurisdiction, that is, whether the

arbitration tribunal has the requisite power to hear the particular case brought before it.").

18.    In the case at bar, the arbitrators have been guilty of misconduct and have

exceeded their powers by, including but not limited to, 1) determining whether or not the

settlement agreement could be arbitrated, 2) determining their own jurisdiction when the

settlement agreement is silent as to an arbitration clause, 3) determining the Panel had

jurisdiction based upon the terminated Original Contract, 4) holding an evidentiary hearing in

Ft. Meyers, Florida, when the Original Contract provided that all hearings shall be conducted in

Eau Claire, Wisconsin, 5)  failing to allow a full and fair hearing by improperly expediting the

hearing effectively preventing any and all discovery to take place when the Original Contract

specifically allowed the parties to conduct discovery, 6) by failing to rule within the time limits

delineated by the American Arbitration Association, 7) by deciding a claim for fraudulent

inducement of a contract that was previously filed in the Western District, 8) by allowing

Superior to present evidence that it withheld in violation of the AAA rules, 9) by conducting a

hearing on a non-judicial day, 10) by awarding attorney's fees ex parte, 11) by conducting a

hearing with a tribunal instead of a single arbitrator, 12) by deciding issues that were not

submitted, 13) by allowing the opposing party to transcribe the proceedings without giving

notice. Therefore, the Arbitration Award must be vacated.  Additionally, the other party to the

Arbitration, Superior Silica, has 1) waived its right to arbitrate, 2) failed to compel MDSC to

arbitration pursuant to any contract or the Federal Arbitration Act, 3) failed to follow the

outlined dispute resolution procedures mandated in the Original Contract, 4) failed to file or submit an Arbitration Demand as outlined in the Original Contract and the AAA Rules, 5) failed to provide MDSC or other parties any notice pursuant to the Original Contract, 6) failed to provide notice pursuant to the AAA Rules, 7) failed to exchange exhibits with the parties in violation of the AAA Rules, and 8) failed to give notice that the hearing was to transcribed in violation of the AAA Rules, therefore the alleged award must be vacated.

**I.  Arbitrators Request For Compensation During Proceedings Constitutes An Impropriety**

19.    Since the Arbitration Panel determined it had jurisdiction over the objection of MDSC and its owners, the Panel and the American Arbitration Association has commanded not once but twice that MDSC pay its portion of fees to conduct further hearings. See attached Exhibit 11. As such the award must be vacated due to the arbitrator's direct financial interest.

20.    A New York trial court vacated a net $2.1 million award against Anchor Construction based on a due process challenge that the arbitrator precluded Anchor from active participation in two days of hearings after it was unable to pay its half of the arbitrators' fees. In all, 12 witnesses testified during seven days of hearings, and 137 exhibits were presented. Both parties attended the first five days of hearings, but Anchor did not attend the subsequent ones because the arbitrators severely restricted its participation for the balance of the case. For example, it was not permitted to cross-examine the other party's witnesses or present a case of its own. Anchor's attorney quit and no company representative appeared on the remaining hearing days. New York statutory law states that parties in arbitration are entitled to be heard, present evidence and cross-examine witnesses. Thus, the court had no problem concluding that Anchor had been denied its statutory right to participate, as well as its right to counsel. As a result, the court vacated the award. *Coty, Inc. v. Anchor Construction*, 776 N.Y.S.2d 795 (App.

Div. 1st Dept. 2004).

21.   The arbitration award against respondent was properly vacated in light of the appearance of impropriety created by the involvement of the arbitrators in the parties' dispute over prepayment of arbitration fees, a matter in which the arbitrators had a direct financial interest. *Id.* In *Matter of Catalyst Waste-to-Energy Corp. (City of Long Beach)*(164 A.D.2d 817, 560 N.Y.S.2d 22 *lv dismissed* 76 N.Y.2d 1017) we held that a request for additional compensation for arbitrators made while hearings were in progress raised the appearance of impropriety in the proceedings, and constituted a sufficient basis to vacate the arbitrators' award. As in *Catalyst*, the petitioners herein should not have been placed in a position where they would feel compelled to accede to the AAA's request to pay the respondent's share of the arbitrators' fee for fear of adverse consequences (164 AD2d, *supra*, at 820). The same is true in this case, therefore the alleged award must be vacated.

## II. The Arbitration Panel Lacked Any Power to Act in Relation to the Settlement Agreement

22.   The *functus officio* doctrine holds that "after a final decision by an arbitrator, the arbitrator becomes *functus officio* and lacks the power to reconsider or amend the decision." *Anderson v. Norfolk & Western Ry. Co.*, 773 F.2d 880, 883 (7th Cir.1985), quoting *A/S Siljestad v. Hideca Trading, Inc.*,541 F.Supp. 58, 61 (S.D.N.Y.1981).   Once an arbitrator issues an award, the arbitrator's authority and power to act is at an end.   *In re Board of Directors of the Ass'n of Apartment Owners of Tropicana Manor*, 830 P.2d 503, 73 Haw. 201, (1992).   Further, when an arbitration award settles all issues submitted in arbitration, the arbitrator loses all authority in the proceeding.   Id.   "[A]s a general rule, once an arbitration panel decides the submitted issues, it become functus officio and lacks any further power to act."   *Ottley v. Schwartzberg*, 819 F.2d, 373, 376 Ct. App. 2nd Circuit (1987 ).   Because there is no indication

that the parties agreed to submit the issue of compliance to the arbitrator, we think it clear that the arbitrator was without authority to rule on that issue." *Id.* Here, as in *Ottley*, there was no authority to have the Panel enforce compliance. The Settlement Agreement is silent as to compliance.

23.     In *KX Reinsurance Co. v. General Reinsurance Corp.*, 2008 U.S. Dist. LEXIS 92717 (S.D.N.Y. Nov. 14, 2008), the court analyzed the challenge to the arbitrators' power to retain post-final award jurisdiction under the FAA. The Kx Re court would not permit the arbitrators to remain in place to decide any future disputes between the parties, noting that such jurisdiction would allow the panel "unlimited authority and the power to exist indefinitely, therefore conferring upon it an unintended judicial character and obviating its clear function as an alternative to judicial proceedings. . . . The specific issues submitted to the Panel define and delineate its powers; by definition, it has no jurisdiction over any potential future disputes." *Id.* at \*19.  "Arbitrators are ad hoc judges — judges for a case; and when the case is over they cease to be judges and go back to being law professors or businessmen or whatever else they are in private life, like Cincinnatus returning to his plow." *Glass Molders Worker International Union v. Excelsior Foundry,* 56 F.3d 844 (7th Cir. 1995). Here, the Arbitration Panel presided over the proceedings up until the Settlement Agreement was reached and the consent award was entered on October 6, 2010 pursuant to AAA Rule R-44.

24.     AAA Rule R-44 provides:

 Award upon Settlement: If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

25.     The Consent Award (Settlement Agreement) called for the Arbitration to be dismissed and was a final binding settlement not contingent on anything and each party was to pay its own fees including any arbitration fees.  Because the Arbitration was dismissed, the Arbitration Panel immediately lost any and all authority and power to act; they became functus officio, and any further acts (including re-convening to adjudicate the dispute over the Settlement Agreement) are void.

The Functus Officio Doctrine Bars the Arbitrators From Any Future Acts, Except Clarification

26.     "Arbitrators are ad hoc judges — judges for a case; and when the case is over they cease to be judges and go back to being law professors or businessmen or whatever else they are in private life, like Cincinnatus returning to his plow."  *Glass Molders Worker International Union v. Excelsior Foundry*, 56 F.3d 844, C.A.7 (Ill.) (1995).

27.     Finality is also intertwined with the doctrine of functus officio which is applied to prevent an arbitrator from revisiting his prior award in order to address the concern that a non-judicial decision-maker might be subject to undue influence by one of the parties.  *La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 572 C.A.Pa. (1967).  In *Union de Trabajadorese Petroquimicos v. Union Carbide Caribe, Inc.,* 628 F. Supp. 99, D.Puerto Rico (1986), the court distinguished between different types of post-award controversies: "It is crucial to distinguish between disputes arising from the application or implementation of the award, and those which concern the interpretation of an award.  Those pertaining to the interpretation of the award fall within the kind of cases that may be remanded to allow for clarification." *Id.* at 102.

28.     The issues of retention of jurisdiction, functus officio and award finality were addressed in *Philadelphia Newspapers, Inc. v. The Newspaper Guild of Greater Philadelphia,*

1987 U.S. Dist. LEXIS 8830 (E.D. Pa. 1987). In *Philadelphia Newspapers* the parties arbitrated the discharge of the paper's editorial cartoonist pursuant to a collective bargaining agreement which provided that the arbitrator's decision would be "restricted solely to a finding of whether or not the discharge was for good and reasonable cause" and limiting the remedies to sustaining the discharge or reinstatement with full pay for all time lost. *Id.* at 1-2. After an initial award, the Arbitrator was asked to clarify the order. *Id.* The newspaper objected to the clarification request and challenged the arbitrator's clarifying order on the basis that he lacked authority to clarify his initial award. *Id.* at 5. The Court held that the arbitrator was without power to amend or further interpret his award, except for correction of clerical mistakes or obvious errors of computation as set forth in the doctrine of functus officio. *Id.* at 7-8. Significantly, **the court noted that the parties had not requested the arbitrator to retain jurisdiction and that the newspaper objected; under those circumstances, "[I]t is inappropriate for an arbitrator to act to implement or to monitor compliance of an award unless all parties consent."** *Id.* at 9.

29.     Furthermore, In order to ascertain the scope of the arbitrator's authority, courts review the arbitration clause and the parties' submissions to the arbitrator.     *Ottley v. Schwartzberg*, 819 F.2d 373, C.A.2 (N.Y.) (1987).   In *Ottley*, The appellate court found that there was no indication that the parties had agreed to submit issues of compliance to the arbitrator and that because the arbitrator had already ruled on the submitted issues, he lacked further power to act, in accord with the doctrine of functus officio. *Id.* In *KX Reinsurance Co. v. General Reinsurance Corp.*, 2008 U.S. Dist. LEXIS 92717 (S.D.N.Y. Nov. 14, 2008), the Court analyzed the challenge to the arbitrators' power to retain post-final award jurisdiction under both the FAA and the Convention on the Recognition of Foreign Arbitral Awards (commonly known

as the "New York Convention"), 9 U.S.C. § 208. The court made a detailed examination of the possible sources of the arbitrators' power to retain jurisdiction including: the arbitration clauses; the arbitration demand; the relief requested by the parties; and the award itself which noted not only that the arbitrators had heard and considered all the evidence and arguments, but also that "all other requests put forward by the parties that have not already been addressed in this Award are hereby denied." Kx Re at *15. The court ruled that: "Arbitrators do not have the power to monitor the parties' compliance with the Award, unless that authority is specifically conferred on them through the parties' submissions." (Emphasis Added) *Id.* at 14, citing *Ottley*, supra, 819 F.2d at 376. The court also brushed aside the argument that it would be more "prudent and economical" for the panel to retain jurisdiction, noting that it was not "legally permissible according to the scope of the authority granted to the Panel by the parties themselves." Kx Re at *16. Nor would the Kx Re court permit the arbitrators to stay in place to decide any future disputes between the parties, noting that such jurisdiction would allow the panel "unlimited authority and the power to exist indefinitely, therefore conferring upon it an unintended judicial character and obviating its clear function as an alternative to judicial proceedings. . . . The specific issues submitted to the Panel define and delineate its powers; by definition, it has no jurisdiction over any potential future disputes." *Id.* at *19.

30.     Finally, the case law with regard to arbitrators becoming functus officio upon the execution of a Settlement is consistent with the Seventh Circuit's interpretation of the retention of jurisdiction by courts once a settlement agreement has been entered into by the parties. The Seventh Circuit has held that once a case is dismissed with prejudice, the court loses jurisdiction to enforce the settlement, notwithstanding the inclusion of jurisdictional retention language in the order of dismissal. See *Jessup v. Luther*, 277 F.3d 926 (7th Cir. 2002). For instance, in *Jessup v.*

*Luther,* a Magistrate's "approval" of a settlement agreement and its subsequent order that the suit be dismissed "with prejudice" resulted in the magistrate losing all power to enforce the terms of the settlement that which resulted in the dismissal. 277 F.3d 926 (7th Cir. 2002). Further, in *Lynch, Inc. v. SamatalMason, Inc.,* an order stating that litigation was dismissed with prejudice but that the court was retaining jurisdiction to enforce the settlement agreement, was found to have no significance because a settlement agreement, unless embodied in some judicial order or unless jurisdiction to enforce the agreement is retained (because dismissal was without prejudice), is enforced like any other contract. *Lynch, Inc. v. SamatalMason, Inc.,* 279 F.3d 487 (7th Cir. 2002).

31.     Here, as in *Ottley,* there was no authority to have the Panel enforce compliance of the Settlement Agreement. The Settlement Agreement is silent as to compliance.  Here, the Arbitration Panel presided over the proceedings up until the Settlement Agreement was reached and the consent award was entered on October 6, 2010 pursuant to AAA Rule R-44.  The Consent Award (Settlement Agreement) called for the Arbitration to be dismissed and was a final binding settlement, not contingent on anything.  Because the parties did not consent to the continued jurisdiction of the arbitration panel to oversee the Settlement Agreement and because the Arbitration was dismissed, the Arbitration Panel immediately lost any and all authority and power to act; they became *functus officio,* and any further acts (including re-convening to adjudicate the dispute over the Settlement Agreement) are void.[4]

**III. The Arbitration Panel Exceeded Its Power When It Determined It Had Jurisdiction Over the Settlement Agreement**

32.     It is well settled that the arbitrator derives its power from the contract.  The Settlement Agreement does not contain a provision to arbitrate.  Therefore, nothing conferred

---

[4] It is important to note that the Settlement Agreement does not mention the Original Contract because Superior had terminated the Original Contract on August 1, 2009.

jurisdiction to the Arbitration Panel to proceed to adjudicate the Settlement Agreement. Rather, the Arbitration Panel simply determined that it had jurisdiction. In doing so, the Arbitration Panel exceeded its powers.   The Panel erred when it ordered on November 6, 2011 that the parties submit briefs as to its jurisdiction. It had no authority to do so. The Settlement Agreement contained no arbitration provision and did not confer authority to the Panel. Therefore, **the Panel had no power to take any act as to its jurisdiction as it had none.**

33.   Because the Settlement Agreement contains no agreement to arbitrate and the agreement is distinct from the Original Contract, the Arbitration Panel exceeded its power when it decided  this dispute may be arbitrated. The question of whether the parties contracted to arbitrate a particular dispute is one for the court to determine, not the arbitrator. *Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local No.2 v. Chicago Tribune Co.*, 794 F.2d 1222, C.A.7 (Ill.), 1986. Only a court of competent jurisdiction has that authority; one cannot be forced to arbitrate issues when the party has not agreed to arbitrate. See *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 101, 253 N.W.2d 536 (1977) *citing United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). *See also Kimberly Area School Dist. v. Zdanovec*, 222 Wis.2d 27, 586 N.W.2d 41 Wis.App.,1998 in which the Court held that it had the authority to decide whether the dispute was arbitrable.

34.   Even if the Original Contract controlled, Section 8.3 of the Original Contract provides that the  Original Contract is governed by the Federal Arbitration Act. Because the FAA applies, it is for the court to determine the matter, not the arbitration panel. Where the ambiguity relates to *who* determines arbitrability — that is, the arbitrability of the question of arbitrability — the Act's presumption is reversed and a court ordinarily decides the question.

*PaineWebber Inc. v. Bybyk,* 81 F.3d 1193, 1198 (2d Cir.1996) (citing *First Options,* 514 U.S. at 944-45, 115 S.Ct. 1920). The issue of arbitrability may only be referred to the arbitrator if "there is `clear and unmistakable' evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Id.* at 1198, 115 S.Ct. 1920. <u>Section 4 of the Federal Arbitration Act also states that "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, *the court* shall proceed summarily to the trial thereof."</u> 9 U.S.C. §4 (Emphasis added).

35.     In the case at bar, the provision is NOT ambiguous. No provision to arbitrate exists. And, even if the Court relies upon the provision contained in the Original Contract, that provision is controlled by the FAA which mandates that the Court, not an Arbitration Panel decides arbitrability.[5] The Seventh Circuit has clearly articulated the rule that "[W]hether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the *court* on the basis of the contract entered into by the parties." *Zurich American Ins. Co. v. Watts Industries, Inc.,* 466 F.3d 577, 580 C.A.7 (Ill), 2006 *citing AT & T Tech., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

36.     An arbitrator cannot, except by agreement of the parties, be the judge of the scope of his authority under the contract. *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n,* 78 Wis. 2d 94, 101-102, 253 N.W.2d 536 (1977). "[W]hile arbitrators obtain their authority from a contract, the task of interpreting the contract to determine whether the arbitrators have jurisdiction is for a court." *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n,* 78 Wis. 2d 94, 101, 253 N.W.2d 536 (1977). It is in the province of the court to determine on the basis of the

---

[5] Specifically, section 4 calls for disputes as to arbitrability to be resolved by the United States court for the district which would have jurisdiction under the written agreement. Section 4 of the FAA gives the power to the Court, not the arbitrator.

contract whether or not the employer is bound to arbitrate.  See *Atkinson v. Sinclair Refining Co.*, (1962), 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 and *Int'l Union, UAW, Local 577 v. Hamilton Beach Mfg. Co.*, 40 Wis.2d 270, 282, 162 N.W.2d 16, 22 (1968).  See also *Jackson v. Rent-A-Center West Inc.*, 2009 U.S. App. LEXIS 20133 (9th Cir. Sept. 9, 2009).  In *Jackson*, the court held that "where, as here, an arbitration agreement delegates the question of the arbitration agreement's validity to the arbitrator, a dispute as to whether the agreement to arbitrate arbitrability is itself enforceable is nonetheless for the court to decide as a threshold matter." *Id.* at *15.

37.    Additionally, Wisconsin has adopted, through *Kimberly Area School Dist. V. Zdanovec*, 222 Wis. 2d 27, 586 N.W.2d 41 Wis.App. 1998, the standard as set forth in the "Steelworker's Trilogy" cases.[6]  The Steelworker's Trilogy stands for the proposition that "[u]nless *the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Id.* at 649, 106 S.Ct. 1415 (collecting cases) (emphasis added).  Additionally, "[T]he arbitrator cannot, except by agreement of the parties, be the judge of the scope of his authority under the contract"; in other words, arbitrators cannot determine whether they have the authority to decide arbitrability unless the parties give arbitrators such authority. *Jefferson,* 78 Wis.2d at 101-02, 253 N.W.2d at 540-41. Further, the evidence of this grant must be "clear and unmistakable." *See AT & T,* 475 U.S. at 649, 106 S.Ct. 1415.

38.    The Settlement Agreement does not contain any agreement to arbitrate.  The parties to the dispute have not agreed to arbitrate.  Accordingly, the Arbitration Panel had and has no authority to determine whether this dispute is subject to arbitration, let alone preside over

---

[6] United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

the actual dispute. The Settlement Agreement does not address arbitration as a means to settle disputes arising out of the Settlement Agreement and MDSC does not agree to arbitrate the dispute. Accordingly, the Arbitration Panel has no basis at all to decide issues related to this dispute. It is important to note that the Court in *Kimberly* found that the Court's province is to review the provisions of the contract to see whether an arbitration provision applies or if the contract specifically excludes arbitration. *Kimberly Area School Dist. v. Zdanovec*, 222 Wis.2d 27, 586 N.W.2d 41 Wis.App.,1998 In the case at bar, there is not even a provision to interpret; there is simply no provision for arbitration in the Settlement Agreement. The only arbitration clause was contained in that Original Contract. That Original Contract was for the mining of sand. MDSC does not claim it was fraudulently induced into that contract. MDSC's claim for fraudulent inducement into a Settlement Agreement does not have its origin or genesis in the contract for services between MDSC and Superior. MDSC's claim for fraudulent inducement has its origin in the acts of Superior Silica, among others, in fraudulently inducing MDSC to settle the Arbitration. Accordingly, each and every argument purported by the Defendants on behalf of Superior Silica (e.g. non-waiver by Superior and their claim that the arbitration proceeding has not expired) is based on the Defendants' unjustified reliance on the wrong contract. The Arbitration Panel determined whether or not it had jurisdiction over matters when it had no authority to do so and its award must be vacated.

39.     The parties to the Settlement Agreement (MDSC and Superior Silica Sands, LLC) agreed to end the Arbitration Proceeding subject to certain terms. Those terms did NOT include any agreement to arbitrate disputes arising out of the Settlement Agreement. Finally, the parties do not agree that this matter should be arbitrated. Therefore, there is no mechanism by which Superior Silica Sands, LLC, could compel MDSC into arbitration.

18

**IV.    The Arbitration Panel Exceeded Its Power By Ordering the Parties to Fort Myers, Florida**

40.    A Court must decline enforcement of an arbitral award on the basis that the arbitral procedure was not in accordance with the agreement of the parties and that the arbitrators exceeded their powers and are guilty of misconduct for conducting a hearing in Fort Myers, Florida when the parties' written agreement states that the hearings would take place in Eau Claire, Wisconsin. Federal Arbitration Act 9 U.S.C. § 10. (assuming that the arbitration provision of the Original Contract can be relied upon by the Defendants).

41.    To determine whether the procedure used was contrary to the parties' agreed arbitral procedures, one must begin with the language of the parties' arbitration agreement. *See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 91 (2d Cir. 2005); *Coast Trading Co. v. Pac. Molasses Co.*,681 F.2d 1195, 1198 (9th Cir. 1982). Arbitration is essentially creature of contract and when contracting parties have agreed upon arbitral forum, to impose another location upon either of the parties without consent would to be improperly rewrite their agreement. *Stewart Tenants Corp. v. Diesel Const. Co.*, 229 N.Y.S.2d 200 (1962).

42.    Courts must enforce the parties' agreement according to its terms, even if the result is inefficient. See *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-21 (1985) (arbitration required even when it results in inefficient procedures: "The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. Courts cannot override the express terms of the parties' agreement. See *Byrd*, 470 U.S. at 221, 105 S.Ct. 1238 ("we rigorously enforce agreements to arbitrate, even if the result is `piecemeal' litigation"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,460 U.S. 1, 20 (1983) (compelling arbitration where it would result in bifurcated proceedings). Court must give effect to freely negotiated forum selection clauses in arbitration

agreements, court cannot compel a party to agreement to a forum other than the one defined in the agreement. *Snyder v. Smith* 736 F.2d 409 (7th Cir. 1984). A party suffers irreparable harm when forced to arbitrate in forum other than the one provided for in the agreement. *Painewebber, Inc. v. Johnson* 888 F. Supp.46 (1995). See also *Messing v. Rosenkrantz* 872 F.Supp. 539 (7th Cir. 1995), *Remington Financial Group v. Anchors Aweigh Marine, Inc.* 12 So.3d 1264 (2009) and *Delay and Daniels v. American Employers* 290 F.Supp 139 (Dist. S.C.1968). An arbitration award is not subject to confirmation if the arbitration proceedings were held in a county other than the one provided for in the written agreement. *Shapiro v. Keystone Insurance Company* 558 A.2d 891 (1989).

43.     The Arbitration Panel used the Original Contract in asserting its jurisdiction over the dispute. Even looking to the Original Contract, the Arbitration Panel exceeded its authority in moving the Arbitration to Florida.[7] Section 8.2 of the Original Contract provides: " If the parties do not resolve the Dispute pursuant to Section 8.1, the parties hereby agree to submit the Dispute to binding arbitration in Eau Claire, Wisconsin, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") effective at the time of submission." The Original Contract was not ambiguous.[8] The Original Contract contemplated that all claims should be asserted in Eau Claire, Wisconsin not Fort Myers, Florida. The requirement of arbitration in Eau Claire, Wisconsin is effectively a forum selection clause. This choice of forum is presumptively enforceable. See *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13-14 (1972) If the Arbitration

---

[7] The Original Contract also provides for fees to be awarded to the prevailing party; while MDSC's position is that the Original Contract does not apply, if this Court finds that the Original Contract applies and should this Court vacate the arbitration award, MDSC demands reimbursement of its fees pursuant to the Original Contract.
[8] The Original Contract (if it applies which MDSC contends it does not) also provides that the parties agree that any dispute be governed by the laws of the State of Wisconsin. See Section 10.8 of Original Contract.

Panel chose to arbitrate pursuant to the Original Contract, it cannot choose to ignore the choice of forum.

44.     The parties agreed to an arbitration clause that requires disputes to be arbitrated in Eau Claire, Wisconsin not Fort Myers, Florida. The procedures used in the arbitration were "not in accordance with the agreement." The Arbitration Panel had no authority to conduct hearing in Florida when Original Contract states Eau Claire, see *Communication Workers v. Monmouth County Board,* 476 A.2d 777. It appears that the arbitrators decided to accommodate their own convenience rather than abide by the terms of the Original Contract.[9]

45.     The Arbitration Panel, in both the transcript of the December 4, 2010 and in the Arbitration Award itself proclaims that MDSC only objected to the proceedings, including the proceedings being held in Florida, on December 3, 2010 and had essentially agreed to hold the December 4, 2010 hearing in Florida. Quite frankly, this statement does not comport with the facts.

46.     MDSC continually objected to the overall proceedings and specifically objected to the proceedings being removed from Wisconsin to Florida. See Exhibit 9 and the Affidavit of Daniel Konicek attached and incorporated by reference herein as Exhibit 12. Under no uncertain terms did MDSC or its owners waive their objection to the proceedings and the proposed venue, and at no time did MDSC or its owners agree to the hearing taking place in Florida. In fact, the transcript reflects that, although the members of the Arbitration Panel and counsel for Superior "seem" to remember, there is no clear agreement cited which would bind MDSC or its owners to

---

[9] MDSC refused to pay the arbitration fees in association with the reconvening of the panel, therefore MDSC submits the panel knew they would not be reimbursed for their travel expenses to Wisconsin so the Panel ordered MDSC to Florida where the Panel members resided in order that the Panel would not incur any further expenses that they would not be able to recover.

a hearing in Florida. In fact, the Arbitration Panel admits that the primary reason for moving the hearing to Florida is for the convenience of the Arbitration Panel itself.

47.     Since the Arbitration Panel's only authority upon which it relied when it determined that it maintained jurisdiction rests in the Original Contract, the Original Contract should be looked to in order to determine whether MDSC waived the venue provision calling for arbitration in Wisconsin. Section 10.2 of the Original Contract clearly states that all waivers must be in writing. Accordingly, unless Superior, the Arbitration Panel, the AAA, or any other party can produce a writing in which MDSC and its owners agreed to waive their rights to arbitrate in Wisconsin, it is clear that the provision was not waived. Accordingly, the removal to Florida was improper and exceeded the Arbitration Panel's authority. Therefore, the Arbitration Award must be vacated.

**V.     The Arbitration Panel Exceeded Its Power When It Relied upon a Terminated Contract to Decide a Post-Contract Termination Dispute**

48.     A party seeking to avoid arbitration because of the lack of an agreement to arbitrate can raise an objection in a motion to vacate when it has not participated in the arbitration. *Commerce and Industry Ins. Co. v. Nester*, 90 N.Y.2d 255, 682 N.E.2d 967, N.Y. 1997. Superior terminated the Original Contract on August 1, 2009 and once the contract was terminated, "the arbitration provision no longer existed or had any force whatsoever except as to rights and wrongs which had already come into existence as to which the contract still remained in effect." *In re Kramer & Uchitelle, Inc.*, 288 N.Y.467, 472, 43 N.E.2d 493, 141 A.L.R. 1497, Court of Appeals of New York *citing Mulji et. al. v. Cheong Yue Steamship Co.*, 1926 A.C. 497; *Russell on Arbitration and Award*, p. 78. As the *Kramer* court holds, upon termination of the

22

contract, "the arbitration provision no longer existed or had any force whatsoever except as to rights and wrongs which had already come into existence." *Id.*

49.     Section 7.6 of the Original Contract provided that: "Upon termination if this agreement, all obligations of all the parties arising during its Term **shall** terminate..." Accordingly, the Original Contract, along with its arbitration provision contained therein was terminated by Superior Silica effective August 1, 2009. The Settlement Agreement and ensuing dispute all arose in October 2010 and after. Without any doubt, the arbitration provision cannot apply to the separate and distinct dispute arising out of the separate contract (Settlement Agreement) executed over fourteen months after the termination of the Original Contract. *See* Kramer, supra. Even if one assumed that the Original Contract and its arbitration provision applied to the Settlement Agreement, which it did not, still that provision could not apply to any act after the termination of the Original Contract.

50.     The Court in *Noldes, Bros. h*eld that "[T]he parties agreed to resolve *all* disputes by resort to the mandatory grievance-arbitration machinery established by their collective-bargaining agreement. The severance-pay dispute, as we have noted, would have been subject to resolution under those procedures had it arisen during the contract's term. **However, even though the parties could have so provided, there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination.** The contract's silence, of course, does not establish the parties' intent to resolve post-termination grievances by arbitration. But in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." *Noldes Bros., Inc. v. Local Number 358, Bakery & Confectionary Workers Union, 430 U.S. 243, 243-244, (1977).*

51.    As earlier outlined, the Original Contract was *not* silent and did provide specific language to exclude post termination provisions. Section 7.6 of the Original Contract provides as follows:

> "**Continuing Obligations.** *Upon the termination of this Agreement, all obligations of the parties arising during the Term shall terminate*, except for any obligations that are expressly stated as surviving the termination or expiration of this Agreement or any obligations that remain executory, which obligations, to the extent they remain executory, shall remain in full force and effect until fully performed by the obligated party. Notwithstanding the foregoing, the termination of the Term shall not release any party from its liability to the other parties under this Agreement arising from a breach of this agreement." (Emphasis added)

52.    Clearly, the aforesaid contract provision terminated the arbitration provisions on August 1, 2009, when Superior chose to voluntarily terminate the contract. The language, *except for any obligations that are expressly stated as surviving the termination,* provides a guideline as to what provisions survived termination. The arbitration clause in the Original Contract does not state that arbitration of a post-termination claim survives termination. The Seventh Circuit dealt with the *Noldes Bros.* presumptions in *Graphic Communications Union, Chicago Paper Handlers' Local No. 2 v. Chicago Tribune,* 794 F.2d 1222, C.A.7(Ill.) (1986). "The question of whether the parties contracted to arbitrate a particular dispute is generally one for the court to determine, not the arbitrator." *Id* at 1226. The United States Supreme Court decision in *Noldes Bros.* were ordered to arbitrate a dispute even though collective bargaining agreement under which dispute arose had expired, **applies only in cases in which the grievance arises under the expired collective bargaining agreement." (Emphasis added).** *Id* (Emphasis Added). "The duty to arbitrate is contractual in nature, and such a duty, absent circumstances giving rise to *Nolde* presumption, will generally **terminate with the expiration of the collective bargaining agreement."** *Id* at 1228. (Emphasis added) *See also Litton Financial Printing Division v. National Labor Relations Board,* 501 U.S. 190, 111 S.Ct. 2215 (1991), *Nissan North America,*

*Inc. v. Jim M'Lady Oldsmobile, Inc.* (Nissan I) 307 F.3d 601,  C.A.7 (Ill.)(2002), and *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.* (Nissan II) 486 F.3d 989,  C.A.7 (Ill.) (2007). *Milwaukee Typographical Union No. 23 v. Madison Newspaper, Inc.* 444 F.Supp. 1223.

### A Written Agreement Is Required In Order To Compel A Party To Arbitration

53.     It is important to bring to the Court's attention that Superior never sought intervention from a court to compel MDSC, Edwards and Cote into arbitration. Instead, Superior after being served with a Motion for Leave to File an Amended Complaint in District Case No. 10CV488, unilaterally sought the aid of a functus officio arbitration panel which had presided over the previous Arbitration Proceeding between the parties.   While there is simply no mechanism with which to "reopen" a closed arbitration, Superior requested that the Arbitration Panel, a panel with no authority to do so, reopen the proceedings between the parties.   It is possible that Superior did so because it had no basis to compel MDSC, Kenin Edwards and James Cote back to arbitration before the Arbitration Panel.   For instance, Superior could not produce a copy of any agreement to arbitrate any issue with MDSC, Edwards or Cote. Additionally, Superior terminated the Original Contract on August 1, 2009, the very agreement it relies upon for the agreement to arbitrate.   See ¶ 56 of the Affidavit of Brandon Bethea attached hereto as Exhibit 13, and the Affidavit of Kenin Edwards attached hereto as Exhibit 14.  Because the Original Contract was terminated, issues arising post-termination (including fraud in the inducement) cannot be arbitrated pursuant to the terms of a terminated contract.   A written agreement, subsequent to the contract termination, is required in order to mandate arbitration. Such a written agreement has never been entered into and does not exist. Therefore, the arbitration of issues which arose post-contract termination had no basis to proceed.

54.     Despite the lack of an agreement to arbitrate, the Arbitration Panel reconvened on November 3, 2010 and on November 4, 2010 conducted a hearing in which the Arbitration Panel ordered the parties to submit briefs concerning whether or not the Arbitration Panel had jurisdiction to hear the dispute. On November 16, 2010, the Arbitration Panel ordered that it had the jurisdiction to hear and decide a disagreement over a settlement agreement which did not contain an arbitration clause. On November 4, 2010, during the hearing, MDSC objected to any further proceeding and refused to give de facto recognition to the Arbitration Panel which may have submitted MDSC to the Arbitration Panel's jurisdiction. Instead, MDSC objected at every turn.

55.     A long established line of cases mandates that once a contract which includes an arbitration provision terminates, and absent a post-termination agreement to arbitrate, parties to the contract can no longer be compelled to arbitrate matters which arise post-termination.

### The United States Supreme Court

56.     The U.S. Supreme Court has consistently held that parties may not be compelled to arbitration to resolve post-contract termination disputes regarding issues which arose after termination of the contract. For example, in *Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190, 111 S.Ct. 2215 (1991) the contract at issue contained an arbitration provision which expired as of October 1979. *Id.* Prior to negotiating a new contract, which presumably would have contained a new, written arbitration provision, Litton laid off 10 employees. *Id.* The Supreme Court held that the dispute was not arbitrable. *Id.*

57.     Among the Court's reasons for holding that the dispute was not arbitrable are that "[T]he law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Litton Financial Printing Division v. National Labor Relations Board*, 501 U.S. 190, 111

26

S.Ct. 2215 (1991). citing *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 :.Ed.2d 583 (1974). Additionally, after one party had argued that the Court's prior holding in *Nolde Brothers* broadly allowed post-termination arbitration of disputes when the disputes had their source in the contracts, the Court specifically limited its prior holding in *Nolde Brothers. Id.* The Court found that "[A] post expiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Id* at 192. Finally, the Court held that a "layoff dispute which occurred following expiration of the collective bargaining agreement did not arise under the agreement and thus employer was not required to arbitrate dispute; layoffs took place almost one year after the agreement expired, and grievances did not involve rights which accrued or vested under agreement or carried over after expiration." Id.

### The Seventh Circuit Court of Appeals

58.     Additionally, the Seventh Circuit Court of Appeals has consistently held that parties may not be compelled to arbitration to resolve post-contract termination disputes regarding issues which arose after termination of the contract.   The Seventh Circuit was presented with the very same issue as to private party's contract and has decided this very same issue twice amongst the same parties. Following the holding of the U.S. Supreme Court in *Litton*, the Seventh Circuit Court of Appeals entertained the same issue in both in 2002 and in 2007, and followed the holding in *Litton*.

59.     In *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.* (Nissan I) 307 F.3d 601, (2002), the District Court for the Northern District of Illinois entered an order

27

compelling arbitration, and the dealership appealed. On appeal, the Seventh Circuit vacated the District Court's order compelling arbitration because there was no evidence of an agreement to arbitrate, because the Original Contract had expired, and because the post-termination oral contract did not contain an arbitration clause. *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.* (Nissan I) 307 F.3d 601, (2002). Additionally, the Seventh Circuit went one step further, stating that the "[P]resumption of arbitrability does not fully apply in cases where arbitration agreement is contained in *expired* fixed-term contract. Instead, courts handling such cases must determine not only whether the parties entered an agreement to arbitrate *some* issues, but also whether the *particular* dispute in question falls within the scope of arbitration agreement - even if that determination requires contract interpretation typically remitted to arbitrator." *Id. citing Litton Financial Printing Division v. NLRB,* 501 U.S. 190, 209, 11 S. Ct.2215, 115 L.Ed.2d 177 (1991) *and CPR (USA) Inc. v. Spray,* 187 F.3d 245, 255 (2d Cir. 1999); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir.1998). As the Court strenuously stated "a contract that by its own terms expired in 1999 cannot possibly be the basis of the parties' current dealership arrangement and thus the termination of the current relationship cannot, at least absent additional evidence, relate in any way to the expired contract." *Id.* at 604.

60.     The case reappeared before the Seventh Circuit in 2007 and the Seventh Circuit did not budge. On remand, the District Court entered summary judgment in favor of Jim M'Lady Oldsmobile, yet Nissan further appealed that decision, arguing that a terminated agreement to arbitrate could provide a basis for compelling the other party to arbitration. *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc,.* (Nissan II) 486 F.3d 989, C.A.7 (Ill.) (2007). On appeal, the Seventh Circuit held that "there was no subsequent written agreement governing the parties' relationship that contained an arbitration clause." *Nissan North America,*

28

*Inc. v. Jim M'Lady Oldsmobile, Inc.* (Nissan II) 486 F.3d 989, 994-995, C.A.7 (Ill.) (2007). Additionally, the Seventh Circuit has further held that upon termination, "[T]he arbitration provision no longer existed or had any force whatsoever except as to rights and wrongs which had already come into existence as to which the contract still remained in effect." *In re Kramer & Uchitelle, Inc.*, 288 N.Y.467, 472, 43 N.E.2d 493, 141 A.L.R. 1497, N.Y. (1942). Finally, "unless the parties agree to continue the [arbitration] clause," the arbitration provision is terminated upon termination of the contract. *McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, C.A.7 (Ill.) (1998).[10]

61.     In the case at bar, the Original Contract was terminated on August 1, 2009. Accordingly, once the Original Contract terminated, arbitration pursuant to the Original Contract is appropriate only where it involves facts and occurrences that arose prior to termination.  See Litton, et al., supra.  The Arbitration Proceeding, Minerals Dev. & Supply Co. v. Superior Silica Sands, LLC AAA Arbitration No. 51 198 1095 09 (the "Arbitration Proceeding") was initiated to resolve a dispute regarding facts and occurrences prior to the termination.  The Arbitration Proceeding resulted in a Settlement Agreement which the all of the parties to the Arbitration Proceeding have agreed is final and binding upon the parties.     The issues for which Superior wrongfully sought to reconstitute and reconvene the Arbitration Panel are all with regard to facts and occurrences post-termination and therefore according to firmly established cases in the Seventh Circuit, <u>cannot be arbitrated pursuant to the Original Contract</u>.

62.     Once Superior terminated the Original Contract, the arbitration clause within the Original Contract terminated as well.  Specifically, Section 7.6 of the Original Contract,

---

[10] The Seventh Circuit has multiple decisions supporting these examples, including <u>Local 703, Intern. Broth. Of Teamsters v. Kennicott Bros. Co.</u> 771 F.2d 300, C.A.7 (Ill.) (1985); <u>United Paperworkers Intern. Union v. Wells Badger Industries, Inc.</u> 835 F.2d 701, C.A.7 (Wis.) (1987); <u>Chicago Typographical Union No.16 v. Chicago Sun-Times, Inc.</u> 935 F.2d 1501, C.A.7 (Ill.) (1991); <u>Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local 2 v. Chicago Tribune Co.</u> 794 F.2d 1222, C.A.7 (Ill.) (1986).

provided that: "Upon termination of this agreement, all obligations of all the parties arising during its Term **shall** terminate..." (Emphasis added). Superior cannot have it both ways, that is, one day state the Original Contract is terminated and then when it prefers to argue otherwise state that despite the termination, the arbitration clause is a valid means to compel arbitration.

63. The Settlement Agreement and ensuing dispute all arose in October 2010 and after and revolved around facts and actions post-contract termination. The arbitration provision in the Original Contract cannot apply to the separate and distinct dispute arising out of the separate contract (Settlement Agreement) executed over fourteen months after the termination of the Original Contract. *See Kramer*, supra. Even if one assumed that the Original Contract and its arbitration provision applied to the Settlement Agreement, which it did not, still that provision could not apply to any act after the termination of the Original Contract. Additionally, the parties did not agree to continue the arbitration clause of the Original Contract and the only remaining agreement of the parties, the Settlement Agreement, is silent as to arbitration.

64. For all of the above reasons, it is clear that the Arbitration Panel erred and exceeded its power when it relied upon arbitration provisions in the Original Contract, a contract which Superior had terminated fourteen months earlier, to decide issues which arose post-termination. Therefore this Court should follow the U.S. Supreme Court and the Seventh Circuits and vacate the arbitration award in question. The Panel erred when it relied upon the arbitration provisions in the original contract that Superior had terminated fourteen months earlier, therefore the award must be vacated.

## VI. The Arbitration Panel Exceeded Its Power When It Determined It Could Decide A Claim For Fraudulent Inducement

65. Further, a claim of fraud in the inducement, even if an arbitration clause is present in the contract (which arbitration clause is absent in the contract at issue), is an issue for the

*court* and <u>not</u> an arbitration panel. *Weinrott v. Carp*, 32 N.Y.2d 190, 298 N.E.2d 42, N.Y. 1973, *citing Matter of Wrap-Vertiser Corp. (Plotnick)*, 3 N.Y.2d 17, 163 N.Y.S.2d 639, 143 N.E.2d 366. Additionally, a "party who has refused to arbitrate because he believes in good faith that his agreement does not bind him to arbitrate, *or that the agreement is not applicable to the controversy,* is protected by the provision of the law which requires *the court* to examine into the merits of such a claim." *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 873 C.A.7 (Ind.), 1985 *citing Cohen & Dayton, supra,* at 271 (emphasis added). In *Matterhorn*, the Court held that when the party "signed a contract that seemed not to incorporate any set of terms that contained an arbitration clause, it may have intended and reasonably believed that it would not be forced to arbitrate disputes arising under the contract." Nevertheless, in *Matterhorn*, there was "enough doubt to make the issue one for the *district court rather than the arbitrator.*" *Id.* The same is true in the case at bar. The Court in *Thompson v. Lee,* 589 A.2d 406 (D.C., 1991) remanded a case to the trial court to conduct further proceedings on a claim of fraudulent inducement of the settlement agreement that stemmed from an arbitration proceedings in which the arbitrator dismissed the claim of fraudulent inducement. *Thompson v. Lee,* 589 A.2d 406 (D.C., 1991). These cases are founded in whole or in part on the rationale that a party is entitled by the Seventh Amendment to a jury trial on a claim for fraud in the inducement.

66. The Seventh Circuit has addressed this very issue before in *Midwest Window Systems, Inc. v. Amcor Industries, Inc.,* 630 F.2d 535, 537 (7th Cir. 1980) wherein the Court found that:

> "fraud allegations are not arbitrable. They are not encompassed within the contract provision providing for arbitration of a dispute "concerning the interpretation or application of any of the provisions" of the original agreement between the parties. The notes are outside that arbitration agreement. The defendant at the very least has the right to the jury trial it sought on that issue."

67.    The same is true in this case. There is no valid agreement to arbitrate much less any language to rely on in the Settlement Agreement. The Plaintiffs are entitled to a trial by jury on their claims of fraudulent inducement.

68.    The Wisconsin Constitution guarantees the Plaintiffs the right to a trial by jury, due process of law under the Constitution, and access to the courts (see Article I section 5), as does the U.S. Constitution Article 7. "An arbitrator exceeds his or her powers when the arbitrator demonstrates either 'perverse misconstruction' or 'positive misconduct,' when the panel manifestly disregards the law, when the award is illegal, or when the award violates a strong public policy." *Racine County v. Int'l Ass'n of Machinists & Aerospace Workers*, 310 Wis. 2d 508, 519, 751 N.W.2d 312 (2008).  Additionally, as the Court in *Seifert v. U.S. Home Corp.* held, "an agreement to arbitrated . . . does not necessarily mandate arbitration of a subsequent and independent tort action based upon common law duties." *Seifert v. U.S. Home Corp.*, 750 So.2d 633, 635, Fla, (1999).

69.    In the present case, it is abundantly clear that the Arbitration Panel's violation of a clear, strong public policy of the State of Wisconsin is sufficiently manifest by either the process used by the Arbitration Panel or the arbitration award. The Arbitration Panel made it clear in this case that they were going to hear and decide the claim for fraudulent inducement (without having authority) in spite of the jury demand previously filed in the Western District case and in spite of the continual objections of the Plaintiffs. These actions of the Arbitration Panel clearly deprived the Plaintiffs their constitutional right to a trial by jury, due process of law under the Constitution and access to the courts especially when given the fact the case was already pending in the Western District, thereby usurping the Court's authority.

70.     In this case, this arbitration panel 1) exceeded its powers when it engaged in perverse misconstruction or positive misconduct by deciding it had jurisdiction when the Plaintiff had filed a jury demand, 2) when the panel manifestly disregarded the law of the State of Wisconsin (Wisconsin Constitution Article I, Section 5), and 3) where the award itself violates strong public policy. The alleged award must be vacated for the aforesaid reasons.

## VII.   The Arbitrators Exceeded Their Power By Holding A Hearing On A Non-Judicial Day

71.     This self-appointed Panel ordered the hearing in Fort Myers, Florida to be conducted on a non-judicial day, Saturday, December 4, 2010. Therefore the Panel exceeded its powers when it so ordered the parties to conduct a hearing on Saturday, December 4, 2010. Courts have held that Arbitration hearings cannot be conducted outside the courts regular days of session. *Katz v. Ugevi* 187 N.Y.S.2d 511, and 18 N.Y.S.2d 28. The panel is a quasi-judicial body and cannot conduct hearings on Saturday or Sunday. MDSC, as noted herein, objected to the hearing. Because the hearing was held on a non-judicial day, without the consent of the parties, the Arbitration award is void. See *Katz v. Ugevi* 187 N.Y.S.2d 511, and 18 N.Y.S.2d 28.

## VIII.   The Arbitration Panel Exceeded Its Authority By Not Allowing Any Discovery

72.     Section 8.3 of the original contract provides that "Each party shall have the same discovery rights as afforded under the Federal Rules of Civil Procedure during arbitration." The Arbitration Panel exceeded its authority by not allowing MDSC, Kenin Edwards and Jamie Cote to conduct limited discovery as to the fraudulent inducement claim in accordance with the aforesaid contractual provision. By placing the hearing on an expedited calendar, the parties were not afforded their contract rights to discovery. *Arnold v. Arnold Corporation* 920 F.2d 1269 held: "Where party was not afforded all his rights to discovery and depositions as to witnesses

who could not be subpoenaed to testify to prove his claim, if arbitrator denies a party access to records or papers to prove his claim and that party loses, the award must be vacated."

73.     Moreover, the Panel exceeded its power when it ordered the parties to Fort Myers, Florida some 3000 miles from the agreed upon location of Eau Claire, Wisconsin. MDSC, Kenin Edwards and Jamie Cote were deprived of their rights by this Panel because they had no time, or no way legal way to despose the parties, or non-parties. See Federal Rules of Civil Procedure 45(b)(2)(b). Power to subpoena is limited to one hundred miles. An arbitrator exceeds his powers and an award must be vacated when the aribitrator demonstrates perverse misconstruction or positive misconduct, when the arbitrator manifestly disregards the law, when the award is illegal, or when the award violates a strong public policy. *Racine County v. Iam Dist. 10* 751 N.W.2d 312 (Wis., 2008). Arbitration awards should be vacated when they exceed what was permissible in the contract providing for arbitration. *Lukowski* 515 N.W.2d 883 (Wis., 1994).

74.     In the case at bar, MDSC was unable to present witnesses in accordance with Section 8.3 of the Original Contract at the evidentiary hearing held on December 4, 2010 in Florida because the Panel failed to follow the forum provisions.  No witnesses MDSC planned on calling to testify at the hearing reside in Florida.  It is when the exclusion of evidence actually deprived a party of a fair hearing that it is appropriate to vacate an arbitral award. *Slaney v. The Intern. Amateur Athletic Assoc.*, 244 F.3d 580 (7th Cir. 2001).  The award must be vacated because the Arbitration Panel exceeded its power by making an award without holding a hearing in which a party could not present evidence that he had not engaged in any fraudulent conduct. *Prudential Sec. v. Dalton,* 929 F.Supp 1411 (N.D.Okl., 1996) The Panel exceeded its authority by not allowing MDSC to conduct discovery pursuant to the terms of the original contract and by

making an alleged award without holding a hearing in which MDSC could have presented witnesses and evidence, therefore the award must be vacated.

## IX.    The Arbitrators Exceeded Their Power by Disregarding the Choice of Law Provision in the Original Contract

75.    The Original Contract stated that Superior "agrees and acknowledges that it is transacting business with Supplier in the State of Wisconsin and that this Agreement shall be governed by, subject to, and construed according to the internal laws, and not the laws relating to conflicts of law, of the State of Wisconsin. In its Award, the Arbitration Panel cites to Michigan, Florida and Illinois law in support of its legal conclusions regarding the issues in the Arbitration. Because the Arbitration Panel's only powers are derived from the Original Contract and the Original Contract requires that the contract be construed according to the laws of the State of Wisconsin, the Arbitration Panel exceeded its power when it interpreted disputes utilizing case law from jurisdictions other than the State of Wisconsin.  See *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548 C.A.7 (Ill.), 2002  in which the Court notes that "[W]e should distinguish between two types of case in which an arbitral award might be challenged for disregarding the law. In one, although the arbitration clause directs the arbitrators to apply the law of a specified state, they decide they don't like that state's law, they like another state's law better and so they will apply that state's law. That would be a case in which the arbitrators had exceeded the authority granted them by the arbitration clause in the parties' contract, a ground for setting aside an arbitration award. *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 554, C.A.7 (Ill.), 2002 citing  9 U.S.C. § 10(a)(4); *Northern Indiana Public Service Co. v. United Steelworkers of America,*243 F.3d 345, 347 (7th Cir.2001); *AGCO Corp. v. Anglin,*216 F.3d 589, 596 (7th Cir.2000); *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Ry.,*768 F.2d 914, 921 (7th Cir.1985); *Abram Landau Real Estate v. Bevona,*123 F.3d 69, 74 (2d Cir. 1997);

*Michigan Mutual Ins. Co. v. Unigard Security Ins. Co.,*44 F.3d 826, 830 (9th Cir.1995). Additionally, "with immaterial exceptions, arbitrators are authorized only to interpret contracts and not to use their own ideas of justice to decide the parties' dispute." *Id.* citing *Eastern Associated Coal Corp. v. United Mine Workers of America, District 17,*531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000); *International Truck & Engine Corp. v. United Steel Workers of America, Local 3740,*294 F.3d apply the law of another state instead.860, 861 (7th Cir.2002); *Ethyl Corp. v. United Steelworkers of America,*768 F.2d 180, 184-85 (7th Cir. 1985). The Court in *BEM I* stated finally that "[N]o interpretation of the contract is imaginable that would have authorized the arbitrators to apply the law of another state instead." Such is the case in the case at bar.

76.   Section 10.8 of the Original Contract provides: "**Choice Of Law.** Customer agrees and acknowledges that it is transacting business with Supplier in the State of Wisconsin and that this Agreement shall be governed by, subject to, and construed according to the internal laws, and not the laws relating to conflicts of law, of the State of Wisconsin." The language of the contract as to Choice of Law is as clear as it can be. The Arbitration Panel cites Michigan, Florida, Rhode Island and Illinois law in support of its legal conclusions regarding the issues in the arbitration. Because the Arbitration Panel's only powers are derived from the Original Contract and the Original Contract requires that the contract be construed according to the laws of the State of Wisconsin, the Arbitration Panel exceeded its power when it interpreted disputes utilizing case law from jurisdictions other than the State of Wisconsin. See *Edstrom Industries v. Companion Life Insurance Co.*, 516 F.3d 546, C.A.7 (Wis. 2008).

77.   In *Edstrom*, the Seventh Circuit held that "precisely because arbitration is a creature of contract, the arbitrator cannot disregard the lawful directions the parties have given

them. If they tell him to apply Wisconsin law, he cannot apply New York law. When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he perforce does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc.—conduct to which the parties did not consent when they included an arbitration clause in their contract." *Edstrom Industries v. Companion Life Insurance Co.*, 516 F.3d 546, 552-553, C.A.7 (Wis. 2008) citing *Milwaukee Board of School Directors v. Milwaukee Teachers' Education Ass'n,*93 Wis.2d 415, 287 N.W.2d 131, 135-36 (1980), *Wise v. Wachovia Securities, LLC,*450 F.3d 265, 269 (7th Cir.2006). The Court went even further and found that "the arbitration clause in this case told the arbitrator to apply Wisconsin law "strictly." This unusual stipulation, like other exact directive language in arbitration clauses **limited the extent to which the arbitrator could indulge his fancy, here in interpreting Wisconsin insurance law. It is unrealistic to think that the arbitrator was even *trying* to interpret Wisconsin law. For though the misrepresentation statute, Wis. Stat. § 631.11(1)(b), on which Edstrom relies was argued to the arbitrator, he did not mention it in his opinion, let alone try to show that it is inapplicable because stop-loss insurance is really reinsurance. He seems not to have interpreted it at all but merely to have ignored it, which was inconsistent with the directive, that he strictly apply Wisconsin law—and would have been inconsistent even if "strictly" had been omitted.** *Id.* (Emphasis added).

78.     While it may be the case that three judges, who have looked to the law of multiple jurisdictions throughout their careers (and presumably rightly so in most circumstances), they cannot do so as arbitrators where it is not allowed under the agreed upon contract terms. The contract in question contains a provision that provides for disputes to be resolved using

Wisconsin Law. Therefore, the entity resolving the dispute (i.e. the arbitration panel) must apply Wisconsin law as required by the contract.

79.     On November 2, 2010, the Plaintiff's counsel notified the Arbitration Panel of the proper Wisconsin authority that the Plaintiffs were relying on in order to affirm the Settlement Agreement and maintain a cause of action for fraudulent inducement. See Letter of Dixon Gahnz attached and incorporated by reference herein as Exhibit 4.  In fact, the Arbitration Panel requested the parties brief this very issue in its November 6, 2010 order. See Exhibit 15 attached and incorporated by reference herein.  Upon a reading of the alleged award it is clear that the Arbitration Panel did not rely on Wisconsin authority, let alone the Wisconsin authority cited to them by the Plaintiffs.  Instead, the Arbitration Panel cites case law from Michigan, Florida Illinois, Rhode Island and California.

80.     The Seventh Circuit clearly mandates that arbitrators exceed their power when the arbitrators stray from the choice of law provisions contained in the contract.  See *Edstrom Industries v. Companion Life Insurance Co.*, 516 F.3d 546, 552-553, C.A.7 (Wis. 2008. As such, the alleged award must be vacated for this reason alone.

X.     **The Arbitrators Exceeded Their Power by Including Findings As to Third Parties**

81.     In its Award, the Arbitration Panel makes a finding that "no one associated with Superior ever made a false statement to MDSC." The Arbitration Panel has no power to make findings as to third parties to an arbitration. See *Eljer Mfg., Inc. v. Kowin Development Corp.*, 14 F.3d 1250 C.A.7 (Ill.), 1994. The arbitration was between MDSC and Superior. The Panel cannot determine factual issues regarding parties who are not parties to the Arbitration.

XI.     **The Arbitrators Exceeded Their Power By Not Providing Timely Decision**

82.     American Arbitration Association Rule R-1 (b) provides that "[U]nless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which **no disclosed claim** or counterclaim exceeds $75,000, **exclusive of interest and arbitration fees and costs.** Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures."

83.     Accordingly, because the Arbitration was conducted using Expedited Procedures (i.e. setting a hearing date under 30 day expedited procedure, the Panel allowing oral notification of a hearing, amount in controversy less than $75,000, etc..), the Arbitration Panel must comply with AAA Rule E-9 by filing a decision or award within 14 days from the date of the closing of the hearing. However, the Arbitration Panel failed to do so.[11]

84.     This Panel set forth the expedited procedures when it ordered the parties to conduct an expedited hearing on December 4, 2010. As such, the Panel has exceeded its authority by issuing an order past December 18, 2010. Section 8.5 of the original contract states: "Arbitrators shall provide a binding decision with limited findings of facts, basic conclusions of law, and a breakdown of any award or decision by the arbitrators." The Court in *Western Employers v. Jefferies & Co.* 958 F.2d 92 held that "Arbitrators exceeded their authority by not providing statement of findings and conclusions of law as required by the agreement, motion to vacate granted." *Western Employers v. Jefferies & Co.* 958 F.2d 92.

---

[11] AAA Rule E-9 provides: Time of Award: Unless otherwise agreed by the parties, the award shall be rendered not later than 14 days from the date of the closing of the hearing or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.

85.     In general, "[T]here must be strict adherence to the essential terms of an agreement to arbitrate." *Brotherhood Of Railway and Steamships Clerks, Freight Handlers v. Norfolk Southern Ry. Co.,* 143 F.2d 1015, C.A.4 (1944). Essential terms include the timely filing by the Arbitration Panel of its arbitration award. As a general rule, a court may not confirm an award made beyond the time required by the parties' contract. *Public Utility Workers v. Public Service Co.,* ,35 N.J.Super. 414, 114 A.2d 443, N.J. Super.A.D. (1955). As the Court held in *Brotherhood,* the "[M]ere decision on the part of the arbitrators, until certified and filed as required by the agreement, constituted no award. When the arbitrators failed to comply with the essential terms of the agreement on which their authority —indeed, their very existence as arbitrators was grounded—and the time passed for the filing of the award, that body became functus officio. Any attempt at making an award thereafter was null and void." *Brotherhood Of Railway and Steamships Clerks, Freight Handlers v. Norfolk Southern Ry. Co.,* 143 F.2d 1015, C.A.4 (1944). The Court in *Brotherhood* thereafter concluded that the award in question was not valid. *Id.*

86.     Furthermore, "the purpose of the provision for filing within a time certain is obvious; if the arbitrators fail to make an award within that time, they pass out of the picture unless the parties agree to extend the time and the way is left clear for the designation of new arbitrators. Were this not so, settlement of disputes could be greatly delayed by mere failure on the part of the arbitrators to act." *Id.* at 1018. Additionally, the time period cannot be extended absent an agreement of the parties; for example, in *General Metals Corp. v. Precision Lodge I.A.M.,* 183 Cal.App. 2d 586, 587 6 Cal.Rptr. 910, Cal.App.2.Dist. (1960), the Court held that "when time for making arbitration award has been fixed by agreement of the parties, the

arbitrator has no jurisdiction to make an award after the time had expired and such an award must be vacated upon application." *Id.*

87.     The Arbitration Panel has, all along (and in error), maintained that it derived its power to conduct these continued proceedings from the Original Contract.    However, even under the terms of the Original Contract, the Arbitration Panel has failed to adhere to the rules incorporated into the Original Contract and agreed to by the parties. Accordingly, the resulting award must be vacated.

88.     The Original Contract incorporated the Commercial Arbitration Rules of the American Arbitration Association. See Exhibit 1, Section 8.2 in which the parties agreed "to have made these (AAA) rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules." AAA Rule E-9 provides that "[U]nless otherwise agreed by the parties, the award *shall* be rendered not later than 14 days from the date of the closing of the hearing." (Emphasis added). AAA Rule E-9 governs expedited hearings and governs these proceedings because the AAA rules also provide that "the Expedited Procedures shall apply in any case in which **no disclosed claim** or counterclaim exceeds $75,000, **exclusive of interest and arbitration fees and costs.** Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures." AAA Rule R-1 (b).

89.     Assuming by arguendo that AAA Rule E-9 does not apply then the only other rule which could apply to the timing of the award would be AAA Rule 41. AAA R-41, the rule in

non-expedited matters, provides that "The award *shall* be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing." Even applying the thirty (30) day time limit mandated in AAA Rule R-41 the alleged arbitration award was untimely.[12] The award was only e-mailed to MDSC's counsel and to James Cote on January 7, 2011. In addition to being served improperly, the award, by either AAA rule was late and therefore the alleged award must be vacated.

90.     Accordingly, because the Arbitration was conducted using Expedited Procedures (i.e. setting a hearing date under 30 day expedited procedure, the Panel allowing oral notification of a hearing, amount in controversy less than $75,000, etc..), the Arbitration Panel must comply with AAA Rule E-9 by filing a decision or award within 14 days from the date of the closing of the hearing, December 18, 2010.[13] However, even if this Court finds that the expedited rules do not apply, the Arbitration Panel must have filed its decision within thirty days of the date of the closing of the hearing which would be January 3, 2010. The Arbitration Panel did neither; it filed its decision on January 7, 2011.

91.     The hearing in this matter was held on December 4, 2010. Had the Arbitration Panel acted in accordance with AAA Rules, the Arbitration Award must have been rendered on or before December 18, 2010. The transcript of the proceedings of December 4, 2010 show that the hearing was adjourned and the proceedings concluded on December 4, 2010. According to the transcript Judge Myse adjourned the hearing. "This hearing stands adjourned." See Transcript at page 215:3, attached and incorporated by reference herein as Exhibit 16. After

---

[12] It's noteworthy to mention that the Panel has failed to serve a proper Notice of Award on the parties. In fact, Kenin Edwards was not even e-mailed a copy. See argument in Plaintiff's Motion to Vacate and Motion to Dismiss.

[13] Superior has not sought any sum of money over and beyond interest, arbitration costs and fees. Therefore, the expedited rules must apply. Had Superior filed a demand for arbitration, Superior would have had to disclose the amount in controversy, yet Superior failed to file any such demand.

December 18 came and went, MDSC and its owners notified the AAA and the Arbitration Panel on December 21, 2010 and December 22, 2010 that they objected to the arbitration award being entered after the fourteen days as provided by AAA rule. See Exhibit 10. MDSC and its owners put the Arbitration Panel on notice that it was not following AAA rules. The Arbitration Panel failed even then to act promptly. Accordingly, the Arbitration Award must be vacated. The self-appointed arbitration panel's authority terminated on December 18, 2010, fourteen (14) days from the adjournment of the hearing or at the very latest on January 3, 2011, thirty (30) days from the adjournment of the hearing. Applying either AAA Rule (E-9 or R-41) the alleged award is untimely.[14]

92.     In a strikingly similar case, the Court in *Zervos v. Freedman Properties Ltd.*, 223 N.J.Super. 599, 539 A.2d 336, N.J.Super.CH. (1987) held that the executive sessions of the arbitrators did not toll the time period in which the arbitrators had to render their award. *Zervos v. Freedman Properties Ltd.*, 223 N.J.Super. 599, 539 A.2d 336, N.J.Super.CH. (1987) In *Zervos*, hearings were held in late October 1986 and on May 12, 1987. *Id.* At the last hearing, the arbitrators set June 1, 1987 as the date for receipt of briefs. *Id.* By a letter dated July 28, 1987 the AAA Tribunal Administrator, advised the parties that the hearings had been declared closed on July 16, 1987 and that "pursuant to the Rules, the arbitrators will have 30 days from that date, or until August 15, 1987 within which to render an award." *Id.* at 601.

93.     Upon a review of the facts, the Court in *Zervos* looked to the applicable construction industry arbitration rules of the AAA for the resolution of this matter. AAA Rule 35 provides in pertinent part that "If briefs are to be filed, *the hearings shall be declared closed as of the final date set by the arbitrator for the receipt of briefs.* ... The time limit within which

---

[14] As of the date of filing this Motion the AAA or the Panel has not properly served any of the Plaintiffs its Notice of Award pursuant to AAA Rule R-39.

the arbitrator is required to make an award shall commence to run, in the absence of other agreements by the parties, upon the closing of the hearings." [Emphasis supplied]. Additionally, AAA Rule 38 provides that "Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection thereto in writing, shall be deemed to have waived the right to object." AAA Rule 39 provides in pertinent part that "the AAA for good cause may extend any period of time established by these Rules, *except the time for making the award.*" [Emphasis supplied]  Finally, AAA Rule 41 provides in pertinent part that "the award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties, or specified by law, not later than thirty days from the date of closing the hearings."

94.     The Court in *Zervos* found that the due date for the award was July 1, 1987. *Id.* Under AAA Rule 35 the hearings were closed on June 1, 1987.  *Id.*  This was the date set for receipt of final briefs and the date by which they were in fact received.  *Id.*  Under AAA Rule 41, the award was required no later than 30 days thereafter. In *Zervos*, even when the AAA administrator assured the parties that the hearing closed July 17, 1987, the administrator could not and the AAA cannot unilaterally extend the time for making the award.  *Id.*

95.     Plaintiffs here not only objected to the tardy award being entered, the Plaintiffs also objected to language of the AAA letter informing the parties that the hearings were closed and that the panel had thirty (30) days to issue an award.  See Exhibit 17.  Oddly and just like in *Zervos* the AAA administrator Alyson DiGiuseppe, on December 28, 2010 responded to the Plaintiff's objection by sending the following communication:

Dear Parties:

This will confirm a hearing was conducted on December 4, 2010, in the above-captioned matter by the arbitrators. The hearing was held in accordance with the Notice of Hearing sent to the parties on November 16, 2010.

The arbitrators determined, in accordance with the Rules, to proceed in the absence of Claimants Minerals Development & Supply Company, Inc., Kevin L. Edwards & James R. Cote, Jr.. The arbitrators heard the testimony of the witnesses and received the evidence presented by Respondent Superior.

The hearings are declared closed. The arbitrators will have 30 days from this date to render an Award.

Please be reminded the Accelerated Exchange Program is terminated. All communications shall be directed to the Association.

Sincerely,

Alyson DiGiuseppe

See attached Exhibit 18.

96.     Just as in *Zervos*, the AAA representative, Alyson DiGiuseppe, without any justification for doing so, assures the parties that the hearing has just closed and has effectively granted to the Arbitration Panel a (wrongful) extension of time in which to enter the Arbitration Award.

97.     In this case the record is clear. The Plaintiffs timely objected in writing to any award being entered by the Arbitration Panel as the award would be untimely. The Plaintiffs objected to the language of the AAA's letter dated December 28, 2010. The Arbitration Panel then entered an untimely award. It is clear that that the time frame to enter an award expired on December 18, 2010. Additionally, the time period for entering an award was not tolled as stated by the AAA. The parties did not grant any mutual extensions of time to enter the award. In fact,

the Plaintiffs properly objected to entering an untimely award.[15] Therefore, this Court must vacate the alleged award as untimely.

## XII.   The Arbitrators Exceeded Their Power By Awarding Fees and Cost *Ex Parte*

98.     An Arbitration Panel cannot enter award of attorney's fee ex parte, this act constituted prejudicial behavior. *Totem Marine & Tug & Barge v. North American Towing, Inc.* (1979) 607 F.2d 649. In this case, on December 17, 2010 Superior provided the Panel with an Application for Fees. This was done thirteen days after the close of the December 4, 2010 hearing. The Arbitration Panel has awarded Superior its fees and costs and in addition sanctions.

99.     The Settlement Agreement is silent as to an arbitration clause and as has been repeatedly established, the Original Contract was terminated by Superior on August 1, 2009. Therefore, there is no mechanism or authority by which the Arbitration Panel could award attorney's fees, costs and sanctions.  In its Award, the Arbitration Panel not only awards fees, costs and sanctions as to MDSC, but also against Kenin Edwards, James Cote, and recommends that monetary sanctions be considered against counsel for all of the parties (including counsel who have never appeared or argued anything in front of the Arbitration Panel.)  MDSC, Kenin Edwards, and James Cote all timely objected to the proceedings in general as well as the Arbitration Award and its grant of attorney fees, costs, and sanctions.  Therefore, the Arbitration Panel exceeded its power by awarding attorney's fees, costs and sanctions and the alleged award must be vacated.

## XIII.  The Arbitration Panel Exceeded its Authority by Conducting the Hearing Via a Three Person Panel.

100.     Section 8.4 of the Original Contract provides in part as follows:

---

[15] It is important to note that AAA Rule R- 37 "Waiver of Rules" does not apply to the Plaintiffs because the Plaintiffs did not "proceed with arbitration".

8.4   Selection of Arbitrator(s).   All Disputes shall be resolved by a single arbitrator unless the amount in controversy is over $500,000, in which case the Dispute shall be decided by a panel of three arbitrators.

101.   In the case at bar, the amount in controversy is less than $500,000 and therefore, if the Arbitration Panel was following the Original Contract, should have been decided by a single arbitrator.   Superior Silica asked the Arbitration Panel to take up the issues related to MDSC's claim for fraudulent inducement without making a demand for arbitration, without providing notice of its intent to arbitrate, and without providing any basis for asking a panel of arbitrators rather than a single arbitrator to preside over the dispute.   Superior Silica's dispute is a request to enforce the Settlement Agreement.   Superior has not requested payment above $500,000.

## XIV. The Arbitration Panel Exceeded Its Power By Not Providing MDSC With Transcript

102.   On December 7, 2010, MDSC and its owners requested a copy of the transcript from the December 4, 2010 hearing from the Arbitration Panel and the AAA. To date the Panel has failed to provide MDSC with a copy of the transcript. Not only has the Arbitration Panel exceeded its power by allowing Superior to present evidence that Superior intentionally withheld from MDSC and its owners in direct violation of AAA Rule E-5 and AAA Rule R-21(b) which require that exhibits be exchanged prior to an arbitration hearing the Arbitration Panel is covering up the testimony of witnesses, withholding evidence that may have been submitted, and more importantly covering up the procedural history of exactly what took place at the hearing (i.e. such as was the hearing closed on December 4, 2010, and how many arbitrators attended the hearing, whether or not if the parties were under oath, etc...) Withholding of evidence clearly exceeds the power of an arbitrator, therefore any alleged award must be vacated.

**XV.   By Not Seeking to Compel Arbitration, Superior Silica Sands, LLC Has Waived Its Right to Arbitration**

103.   Only MDSC and Superior Silica Sands, LLC are parties to the Settlement Agreement. As noted above, the Settlement Agreement contains no provision for arbitration of disputes arising out of the Settlement Agreement. MDSC initiated an action in Monroe County, Wisconsin against Hunton & Williams and Insight Equity. Both Hunton & Insight removed the action to the District Court without opposition from MDSC. Both Hunton & Insight have submitted the issue of whether the dispute regarding the Settlement Agreement should be decided by the District Court to the District Court. Additionally, Superior Silica Sands, LLC to date has failed to file a motion to compel arbitration and has therefore waived its right to arbitrate the Settlement Agreement. (See American Arbitration Association Rules 4 and 5).

104.   A party's election "to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390, C.A.7 (Wis.),1995. Additionally, "[w]aiver will be found where the party seeking to invoke the right to arbitration has taken some action inconsistent with the exercise of that right and the party opposing arbitration has been prejudiced by that inconsistency." *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 712 F.2d 270, 273, C.A.Ill.,1983 *citing Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.,* No. 76 C 810, slip op. at 22 (N.D.Ill. Aug. 20, 1982).

105.   To date, Superior Silica Sands, LLC, the only other party to the Settlement Agreement, has not served MDSC with a motion to compel arbitration. Accordingly, all parties involved <u>have taken actions inconsistent with the exercise of any alleged right to arbitrate the Settlement Agreement</u>. Therefore, the right to arbitrate has been waived by the parties, including Superior Silica. Furthermore, this Panel cannot grant relief to non-parties such as

48

Hunton & Williams and Insight Equity as it would be ultra vires. *Lefikovitz v. Wagner*, 395 F.3d 773 (7th Cir. 2005).

## XVI. Because Superior Failed to Follow the Procedural Requirements for Initiating Arbitration, the Issue Was Not Ripe For Arbitration at the Time of the Arbitration Award

106.   If the Original Contact is controlling then Superior failed to follow the outlined procedure for conducting arbitration.   Superior's failure to provide notice and to demand arbitration pursuant to the Original Contract and the rules of the American Arbitration Association is reason enough to vacate the award.  Section 8.1 of the Original Contract provides that the parties must first negotiate any dispute, that the party invoking the dispute must provide the other party written notice of its decision to negotiate and after such notice designate representatives to negotiate.  Superior failed to follow any of these provisions when it simply asked the Arbitration Panel to re-convene to preside over the dispute related to the Settlement Agreement.

107.   Superior failed to serve any written notice that it was willing to negotiate the dispute in accordance with Section 8.1. Furthermore, Superior failed to appoint any representative to negotiate the dispute and failed to define the dispute in accordance with Section 8.1 of the original contract, instead of following the mandated procedures Superior sought instant relief from the same Panel that conducted the hearing that was defined in the original Demand for Arbitration filed in August, 2009.

108.   In addition to failing to negotiate, Superior failed to submit the dispute to binding arbitration.  Section 8.2 of the Original Contract provides that, after negotiation, the parties agree to submit the dispute to binding arbitration in Eau Claire, Wisconsin.  Superior failed to file the mandatory Notice of Arbitration with the Panel or the MDSC, Kenin Edwards or Jamie Cote in violation of AAA Rules R-4 or R-5 when submitting this matter to the arbitration panel.  The

relevant section of AAA Rule 8-4 provides that the initiating party must serve written notice of its demand to arbitrate and such notice shall contain the nature of the dispute and the parties involved, the amount involved, remedy sought and hearing locale.

109.   Superior failed to provide MDSC with notice of its submission to arbitration pursuant to AAA R-4 and R-5.  As the United States Court of Appeals for the Fifth Circuit explained, a predispute arbitration agreement generally is "not self-executing" — "[b]efore arbitration can ... proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him the authority to act." *Piggly Wiggly Operators' Warehouse Inc v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union*, 611 F.2d 580, 583 (5th Cir. 1980). "Submission to arbitrate an existing controversy must be made in writing, subscribed by the party...or his lawful agent." *Jones v. Cauldwell Wingate Co.* 141 N.Y.S.2d 128, 129 (1955). "One of the essentials of a valid submission is that it set out subject matter of the dispute in such a manner as to leave no reasonable doubt as to what was intended to be submitted to arbitration." *Fineg v. Pickrell*, 305 P.2d 455, 459 (1956).  For all the aforesaid failures of Superior to follow the proper procedures the award must be vacated. Any one of the reasons cited by the Plaintiffs is enough to vacate the alleged arbitration award in this case.  Superior is guilty of violating nearly every procedural step to enforce the arbitration clause found in the Original Contract.  The Plaintiffs maintain that Superior's termination of the Original Contract on August 1, 2009 also terminated the arbitration clause and any requirement to arbitrate post-termination disputes thereafter. However, if arbitration had been conducted properly, Superior was mandated to do the following prior to rushing to the functus officio arbitration panel:

| Contract Provision/Step | Date Should Have Occurred | Did Superior Conform |
|---|---|---|

| 8.1 Written notice of decision to negotiate | October 26, 2010 | NO |
|---|---|---|
| 8.1 Designate representative to settle dispute | November 3, 2010 | NO |
| 8.1 Designated representatives negotiate dispute | November 24, 2010 | NO |
| 8.1 Notice of submission to arbitration | November 25, 2010 | NO |
| 8.3 Federal Arbitration Act Applies, Superior should have compelled arbitration | November 25, 2010 | NO |
| 8.3 Parties discovery rights under Federal Rules of Civil Procedure | November 25, 2010 | NO |
| 8.4 Selection of Arbitrators/Proper number of arbitrators | November 25, 2010 | NO |
| 9.1 Notices | November 4, 2010<br>November 26, 2010<br>December 4, 2010 | NO |
| 10.8 Choice of Law Provision | November 25, 2010 | NO |

### AAA Expedited Rules

| AAA Expedited Arbitration Procedures | Rule States | Did AAA/Superior Conform with Rule |
|---|---|---|
| E-2 - Changes of Claim or Counterclaim | Changes to claim may occur with agreement of other party or consent of arbitrator. | NO |

52

Case 2:11-cv-00196-CEH-SPC   Document 1   Filed 04/04/11   Page 53 of 73 PageID 53

| E-3 - Serving of Notices | Notices may be given by telephone and followed up in writing. | NO |
|---|---|---|
| E-4 - Appointment and Qualifications of Arbitrator | n/a | NO |
| E-5 - Exchange of Exhibits | Two days prior to hearing exhibits to be exchanged | NO |
| E-6 - Proceedings on Documents | n/a | NO |
| E-7 - Date, Time and Place of Hearing | The AAA will notify the parties of the time and place of the hearing. | NO |
| E-8 - The Hearing | Hearing shall generally take one day, Arbitrator may request further documentation within two days of hearing, and arbitrator may schedule additional days within seven business days of original hearing. | NO |
| E-9 - Time of Award | No later than 14 days form date of closing of the hearing. | NO |

110.    While MDSC's position is that the events herein were governed by the expedited rules, if as  Superior alleges, the arbitration was governed by the general Commercial Arbitration Rules, the Arbitration Panel failed even to conform to the general Commercial Arbitration Rules as follows.

| AAA - Commercial Arbitration Rules | Rule States | Did AAA/Superior Conform with Rule |
|---|---|---|

| | | |
|---|---|---|
| R-1 - Agreement of Parties | Parties Agree to use AAA rules, any changes must be in Agreement or by Arbitrator, Unless otherwise stated, Expedited Procedures apply to cases with no disclosed claim. | NO· the Settlement Agreement contained no agreement to arbitrate. |
| R-4 - Initiation under Arbitration Provision of Contract | Written notice to arbitrate must be given, answering statement can be filed w/in 15 days. | NO, Superior filed no notice to arbitrate; Superior simply informally asked the Panel to reconvene. |
| R-5 - Initiation under Submission | Parties to any existing dispute may commence arbitration by filing with the AAA, signed by both parties and filing appropriate fee. | NO, no submission filed. |
| R-6 - Changes of Claim | After filing claim, in order to make a new claim, it shall be in writing filed with the AAA. The party filing claim shall provide copy to the other party, who shall have 15 days to file an answer. After an arbitrator is selected no new claim may be submitted without Arbitrators consent. | NO, Superior failed to submit a claim |
| R-10 - Fixing of Locale | Parties may mutually agree to a location or one party may request a location. If not objected to within 15 days of notice to AAA the locale shall be the one requested. | NO, locale was fixed by the Original Contract; MDSC, Kenin Edwards, and James Cote objected within the 15 day time period. |

| | | |
|---|---|---|
| R-15 - Number of Arbitrators | If contract doesn't state number of arbitrators than one arbitrator shall hear case. | NO[16] |
| R-18 - Communication with Arbitrator | No party shall communicate ex parte with an arbitrator concerning the arbitration. | NO[17] |
| R-20 - Preliminary Hearing | A preliminary hearing can be held, to discuss issues, schedules, etc. | NO[18] |
| R-21 - Exchange of Information | At least five days prior to the hearing, all exhibits shall be exchanged between parties. | NO, Superior failed to exchange any of the over 40 exhibits it presented at the December 4th hearing. |
| R-22 - Date, Time, and Place of Hearing | AAA shall send notice of the date time and place of the hearing at least 10 days prior to the hearing taking place. | NO[19] |
| R-25 – Oaths | Each arbitrator shall take an oath of office prior to proceeding with hearing. | NO, no evidence in the transcript that any member of the panel took the required oath prior to the hearing. |
| R-26 - Stenographic Record | A notice of whom and that person's details, address, telephone number, electronic or videotaped, etc...Stenographic record of hearing be made and must be made available to all | NO[20] |

---

[16] If original panel should hear case then R-6 should have been abided by
[17] Evidence of Superior's ex parte communication in transcript.
[18] R-20 b. because there was no written demand as required by R-4, R-5 or R-6
[19] No notice given within 10 days of hearing.
[20] Transcript not provided to MDSC upon request; the Plaintiffs were never given three day notice.

| | parties for inspection at a date, time and place determined by arbitrator. | |
|---|---|---|
| R-28 - Postponements | Arbitrator may postpone the hearing upon request of a party for good cause. | NO[21] |
| R-29 - Arbitration in Absence of a Party | Arbitration may proceed in the absence of another party. | NO[22] |
| R-30 - Conduct of Proceedings | Claimant shall present evidence to support its claim. | NO[23] |
| R-31 – Evidence | Parties may present evidence to support an understanding of the dispute. | NO[24] |
| R-32 - Evidence by Affidavit and Post-hearing Filing of Documents or Other Evidence | Arbitrator may receive evidence post hearing, arbitrator shall give it weight only after considering any objection made to its admission. | NO[25] |
| R-35 - Closing of Hearing | Arbitrator shall declare hearing closed at end of hearing.  If briefs to be submitted or evidence per R-32 then the hearing shall close upon the later of the dates. | NO[26] |
| R-37 - Waiver of Rules | Any party who proceeds with arbitration after knowledge that these rules have not been complied with and who fails to state an objection, shall be deemed to have waived it. | NO[27] |
| R-39 - Serving of Notice | Notice to be given to all parties, can be via email upon agreement. | NO[28] |

---

[21] MDSC and its owners requested to postpone the hearing.
[22] Notice not properly given as to the hearing, no claim filed per R-4, R-5 or R-6.
[23] No demand or claim filed or notice given per R-4, R-5 or R-6.
[24] No demand or claim filed or notice given per R-4, R-5 or R-6.
[25] No demand or claim filed or notice given per R-4, R-5 or R-6.
[26] In the transcript the hearing was closed, not subject to filing of additional documents.
[27] MDSC objected and did not proceed with the hearing.
[28] Email communication not agreed to by Edwards and Cote, proper notice not given to MDSC, Cote or Edwards.

| R-41 - Time of Award | Award must be given 30 days from closing of hearing. | NO[29] |
| R-45 - Delivery of Award to Parties | Award must be delivered. | NO[30] |
| R-47 - Release of Documents for Judicial Proceedings | AAA shall provide, upon request of a party, furnish to the party copies of any papers in AAA's possession. | NO[31] |

## XVII. Superior Failed To Provide Proper Notice

111.    Superior failed to serve proper notice of proceedings in accordance with Section 8.2 of the original agreement.  Section 8.2 of the original agreement further provides that "Arbitration may proceed in the absence of any party if notice of the proceedings has been given to such party." Pursuant to the Original Contract, the parties agreed that all Notices would be provided pursuant to Section 9.1, which set forth the method and addresses for which each party agreed to receive notice.  Additionally, AAA Rule R-39 contains additional notice provisions which require parties to provide notice via mail unless all parties agree to another form of notice.

112.    Superior failed to serve any proper notice on any of the parties pursuant to the Original Contract terms and the AAA Rules therefore the hearing conducted on December 4, 2010 is null and void and the Arbitration Award must be vacated.

## XIII. The Arbitration Panel Exceeded Its Authority And Are Guilty Of Misconduct By Allowing Superior To Present Evidence That Superior Failed To Provide To Plaintiffs Prior To The Hearing In Violation Of AAA Rules For Exchanging Exhibits

113.    According to the transcript of proceedings, as many as forty exhibits were presented to the arbitration panel by Superior.[32] See Exhibit 16.  As of the date of this brief,

---

[29] Award given 34 days from closing of hearing.
[30] Award not delivered properly
[31] Documents not released to MDSC upon request.

Superior has failed to exchange *any* of the exhibits presented at the December 4, 2010 hearing with the Plaintiffs. This in and of itself is grounds to vacate the award as it is a clear violation of AAA Rule E-5 and R-21(b). AAA Rule E-5 and AAA Rule R-21(b) require that exhibits be exchanged prior to an arbitration hearing. AAA Rule E-5 provides that at least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing." AAA Rule E-5. Additionally, Rule 21(b) provides that at least five business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing." Superior simply chose to proceed to hearing without exchanging any of the exhibits to MDSC or its owners in direct violation of AAA rules (not to mention the most basic rules of civil procedure). The hearing, therefore, was not conducted in accordance with the AAA Rules and any resulting award must be vacated.[33]

114. MDSC and its owners received no notice of any exhibits to be used at the hearing and received no copies of any exhibits used at the hearing. MDSC and its owners therefore had no opportunity to assess whether Superior had *any* evidence to present to the Arbitration Panel, let alone, evidence sufficient to rebut MDSC's claims of fraudulent inducement. Additionally, the Panel further erred when it allowed the exhibits to be presented at the December 4 hearing without proof from Superior that it had given proper notice to the Plaintiff that the exhibits had been provided to the Plaintiffs.

115. The transcript reveals that the Arbitration Panel never requested any notification from Superior that it had provided the exhibits to the Plaintiff prior to allowing the exhibits into evidence. The Arbitration Panel purportedly obtained its authority to conduct the hearing based upon the Original Contract, and as argued herein the Original Contract incorporates the AAA

---

[32] The transcripts states 43 exhibits, however the alleged award states as many as sixty exhibits were entered, none of which have ever been supplied to the Plaintiffs after written requests.

[33] Superior, AAA and the Panel all refuse to provide the Plaintiffs a copy of the exhibits.

rules, which include the requirement to exchange exhibits. Therefore, the Arbitration Panel should not have allowed any evidence to be presented in the absence of notice that the exhibits were previously provided to the Plaintiffs either two (2) days or five (5) days prior to the hearing, in accordance with AAA Rules E-5 or Rule 21(b). Therefore the award must be vacated for the aforesaid reasons.

116.    Superior failed to exchange exhibits with the parties in violation of AAA Rule E-5 and R-21(b).   AAA Rule E-5 and AAA Rule R-21(b) require that exhibits be exchanged prior to an arbitration hearing.  Superior simply chose not to provide any exhibits to the parties in direct violation of the aforesaid Rules, therefore the hearing was conducted not accordance with the Rules.  Where there was an apparent conscious withholding of evidence there was "corruption" within the meaning of the statute which authorizes the court to vacate an arbitration award when the award was procured by corruption. See Federal Arbitration Act 9 U.S.C. § 10(a)(1). *Teamsters Local Union 11 v. Abad,* (1975) 343 A.2d 804.  MDSC received no notice of any exhibits to be used at the hearing and received no copies of any exhibits used at the hearing. MDSC therefore had no opportunity to assess whether Superior had *any* evidence to present to the Arbitration Panel, let alone, evidence sufficient to rebut MDSC's claims of fraudulent inducement.  Additionally, the Panel erred when it allowed the exhibits to be presented at the December 4 hearing without proof that the exhibits had been provided to MDSC.  Therefore the award must be vacated for the aforesaid reasons.

## XIX.   Superior Failed To Give Notice As To Transcribing Proceeding

117.    Panel exceeded its power to allow the transcript and Superior failed to notify the parties in accordance with Rule 26. AAA Rule R-26 requires *"Any party desiring a stenographic*

*record shall make arrangements directly with a stenographer and shall notify the other parties of*

*these arrangements at least three days in advance of the hearing."*

118.    Superior failed to provide any information as to the arrangements it made as to a

stenographer in direct violation of AAA Rule R-26.  MDSC received no notice that a transcript

was arranged and who the stenographer was to be. As such the alleged award must be vacated.

## XX.    Arbitration Panel Exceeded Its Power By Allowing Superior To Proceed Without Filing a Change of Claim In Violation of AAA Rule R-6

119.    AAA Rule R-6 provides that "After filing of a claim, if either party desires to

make any new or different claim or counterclaim, it shall be made in writing and filed with the

AAA. The party asserting such a claim or counterclaim shall provide a copy to the other party,

who shall have 15 days from the date of such transmission within which to file an answering

statement with the AAA. After the arbitrator is appointed, however, no new or different claim

may be submitted except with the arbitrator's consent."

120.    Apparently the Arbitration Panel did not find it necessary for Superior to file a

new demand to arbitrate pursuant to AAA Rule R-4 or R-5, because Superior failed to file any

demand in the present controversy arising out of the Settlement Agreement.[34]  Instead of a new

demand for arbitration, the Arbitration Panel simply issued an order delineating what it believed

to be the new issues. See Nov. 16 order attached and incorporated by reference herein as Exhibit

19.  As such, the Arbitration Panel allowed Superior to proceed without "changing its claims"

that Superior made in September of 2009 when Superior filed its original Demand and Counter-

claim. Therefore, the Arbitration Panel exceeded its power by not following the AAA Rules that

mandated that Superior to file an Amended Counter-claim or Amended Demand to Arbitrate.

---

[34] See Plaintiff's Motion to Vacate at ¶ XVII.

121. As the United States Court of Appeals for the Fifth Circuit explained, a predispute arbitration agreement generally is "not self-executing" — "[b]efore arbitration can ... proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him the authority to act." *Piggly Wiggly Operators' Warehouse Inc v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union*, 611 F2d 580, 583 (5th Cir. 1980). " Submission to arbitrate an existing controversy must be made in writing, subscribed by the party...or his lawful agent." *Jones v. Cauldwell Wingate Co.*, 141 N.Y.S.2d 128, 129 (1955 ).

122. The Original Contract is the means with which the Arbitration Panel determined that they had jurisdiction to hear any dispute between the parties. And, as the Original Contract incorporated the Commercial Arbitration Rules of the American Arbitration Association, the arbitration proceedings must at the very least comply with the AAA rules. Because the proceedings failed to adhere to the AAA rules, the alleged award must be vacated.

## XXI. Arbitration Panel and the AAA Violates Its Own Rules By Refusing MDSC's Request For Certified Documents

123. AAA Rule R-47 provides that "[T]he AAA shall, upon the written request of a party, furnish to the party, at the party's expense, certified copies of any papers in the AAA's possession that may be required in judicial proceedings relating to the arbitration." On January 10, 2011, the Plaintiffs made such written request to the Arbitration Panel and the AAA, and thus far have been denied access to the files, writings, e-mails and papers. See Attached Exhibit 20. Without the aforementioned information the Plaintiffs are severely prejudiced in that the Plaintiffs cannot review all the ex parte communications between Superior and the Arbitration Panel and between Superior and the AAA as well as those between the Arbitration Panel and the

AAA. According to comments contained in the transcript of proceedings, W. Jeffery Edwards had directly contacted staff members of the AAA and it appears that Edwards may have had *ex parte* communications with members of the Arbitration Panel. In addition, the transcript reveals that Judge Myse has also had direct communications with the AAA concerning the hearing, notice of the hearing and payment arrangements by the parties. As such, and because the AAA rules were not followed, the alleged award must be vacated.

## XXII. Arbitration Panel Exceeded Its Power By Entering An Award Against Edwards and Cote Because The Guaranty Was Extinguished

124. As established herein, the Settlement Agreement was final and binding. Therefore, as of October 6, 2010 Superior forever had released Kenin Edwards and Jamie Cote of their obligations pursuant to the Guaranty. No party to the Arbitration has even so much as argued that the Settlement Agreement was not final and binding; to the contrary, Superior has strenuously sought to enforce the Settlement Agreement. Therefore, as the Settlement Agreement released all obligations pursuant to the Guaranty, the Arbitration Panel could not have and exceeded its power when it (i) claimed it had jurisdiction over Edwards and Cote and (ii) by entering an alleged Arbitration Award against Edwards and Cote individually when any personal liability had been forever waived by Superior.[35] Therefore, the alleged award must be vacated.

## XXIII. Arbitration Panel Exceeded its Power By Ignoring Express Language Of Contract

125. The Original Contract contained the full and complete agreement between the parties. See Section 10.4 which states that: (1) the written agreement constitutes the full and

---

[35] The Guaranty references the Original Contract arbitration clause as means to arbitrate, however Superior had terminated the Original Contract on August 1, 2009 therefore the Panel could not have jurisdiction over Edwards or Cote for that reason alone.

complete agreement between the parties; and (2) the written agreement supercedes all prior agreements and practices not specifically preserved in the contract.

126.   "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not dispense his own brand of industrial justice.   He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.   When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)). "[T]he arbitrator's decision should not be upset unless it is arbitrary or capricious or fails to draw its essence from the collective bargaining contract because it exceeds the confines of interpreting and applying the contract It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract that the award can be said not to "draw its essence from the collective bargaining agreement." *Burkart Randall v. Lodge # 1076*, 648 F.2d 462, 465 (7th Cir.1981) and *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184-85 (7th Cir.1985)). The Supreme Court recently reiterated that judicial review of an arbitrator's decision is limited, stating that "the fact that a court is convinced [the arbitrator] committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (quoting *Eastern Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000).

127.   As numerous cases in numerous jurisdictions hold, arbitrators only derive their powers from the agreement of the parties. In the case at bar, the Arbitration Panel did not follow the choice of law provisions contained in the Original Contract and to which the parties agreed,

they did not follow the notice provisions of the Original Contract, they did not follow the specific procedures to be followed prior to submission to arbitration, they did not follow the terms which mandated number of arbitrators that were to decide a claim for less than $500,000.00, and they did not follow the locale provisions of the Original Contract, among others. Thus, the arbitrators cast aside the written and thoroughly negotiated terms of the Original Contract and any subsequent award must be vacated.

128.    In the case at bar, the arbitrators issued an award based not on any reading of or language in the contract, but rather on their personal view of how the contract would read if the parties conduct were somehow codified and inserted into the document itself.    Thus, it is evident that the arbitrator rejected the plain language of the contract, without ever claiming to be "interpreting" any provision of it and in doing so rewrote the contract and inscribed his own language upon the contract; something they were not authorized to do.  *See, Anheuser-Busch, Inc. v. Beer, Soft Drink, Water, Fruit Juice, Carbonic Gas, Liquor Sales Drivers, Helpers, etc.,* 280 F.3d 1133, 1137 C.A.7 (Ill. 2002).    Also, the Court in *Pennsylvania Power Co. v. IBEW*, 276 F.3d 174, C.A.3 (Pa.) (2001), reversed the award of an arbitrator who ignored a zipper clause like the one in this contract and, by considering the parties' practices and other extrinsic evidence, "exceeded his powers under the Agreement" and "altered the Agreement in direct violation of its provision that he had no power to do so."  *Id.* at 179.    The court held that "the arbitrator's decision conflicts with the express provisions of the Agreement between the Company and the Union" and therefore, "fails to draw its essence from that Agreement."  *Id.* at 181.

129.    Carefully written, well-reasoned, and thoroughly negotiated contracts are presumptively complete, and the added presence of a merger clause is further strong evidence

"that the parties intended the writing to be the complete and exclusive agreement between them." *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1206, C.A.7 (Ill.) (1998). Arbitrators must not "stray from interpretation and application of the agreement and effectively 'dispense [their] own brand of industrial justice.'" *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 at 509, 121 S.Ct. 1724, U.S. (2001) (quoting *Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. 1358).   But that is precisely what the arbitrators did when they cast aside the extensively negotiated contract and ignored the clear and specific language of the choice of law provisions, they chose not to follow the notice provisions of the original contract, they chose not to follow the mandated terms of the contract that called for specific procedures to be followed prior to submission to arbitration, chose to ignore the number of arbitrators that were to decide a claim for less than $500,000.00, chose to ignore the locale provisions of the original contract, the arbitration clause, and the zipper clause. Arbitrators are not free to dispense their own brand of industrial justice and *"language of the contract may not ignore the plain." Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (emphasis added).   Thus, while the parties may agree to arbitration, they may also agree, as they did in this contract, to limit the arbitrator's authority and preserve their right to challenge decisions when the arbitrators have reached out and rendered a decision that strays beyond his delegated authority and is barred by the negotiated contract.   See *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 581, C.A.7 (Wis.) (2001) ("People who want their arbitrators to have fewer powers need only provide this by contract.").

130.   In this case, the arbitrators ignored the plain language of at least seven clauses in the contract-the clause concerning locale, jurisdiction, number of arbitrators, choice of law, notice, and mandated procedures prior to arbitration, the zipper clause, and the arbitration clause-

all of which limited their authority and were written by the parties to prevent the type of improper award.   The Arbitration Panel ignored at least seven provisions of the Original Contract.  Therefore, the Arbitration Panel clearly exceeded their power and the alleged award must be vacated for all the aforementioned reasons.  Of course, all of this assumes that the Original Contract is controlling, which it is not.

### XXIV. The Arbitration Panel is Guilty Of Misconduct For Not Postponing Hearing And Its Manifest Disregard of The Law

131.    Section 10(a)(3) of the Federal Arbitration Act provides that "(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration— (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;"

132.    On November 5, 2010, the Plaintiffs clearly notified the arbitration panel that the Plaintiffs were not seeking to rescind the settlement agreement, in fact the Plaintiffs stated to the arbitration panel that they were affirming the settlement agreement and suing for damages for fraudulent inducement and cited Wisconsin authority for doing so.  On or about November 25, 2010, the Plaintiffs learned that the arbitration panel denied their relief to postpone the hearing set for December 4, 2010. As such, the Arbitration Panel ignored clear precedent and therefore is guilty of misconduct.

133.    As noted in MDSC's Motion to Vacate, the Arbitration Award, contrary to the terms of the Original Contract, cites California, Michigan and Illinois cases in support of the Arbitration Panel's reasoning that the Plaintiffs must refund the settlement proceeds before the Plaintiff can sue for fraudulent inducement.  However, the Plaintiffs informed the Arbitration

66

Panel of the Wisconsin authority which held that a party may maintain settlement proceeds (retain its rights pursuant to the settlement) and also litigate a claim for fraudulent inducement into that settlement. The arbitration panel clearly ignored the Wisconsin choice of law provision in the Original Contract and ignored the Wisconsin law that the Plaintiffs clearly informed the Arbitration Panel of in the letter dated November 5, 2010. As such the arbitration panel manifestly disregarded the law.

134.    In addition, on November 5, 2010, the Plaintiffs notified the Arbitration Panel that the Arbitration Panel did not have jurisdiction to hearing any dispute concerning the Settlement Agreement. The Plaintiffs cited Wisconsin authority for Plaintiff's aforesaid position. In fact, plaintiffs cited *Kimberly Area School Dist. v. Zdanovec*, 222 Wis.2d 27, 586 N.W.2d 41 Wis.App., (1998) in support of Plaintiff's argument that the Arbitration Panel could not determine its own jurisdiction concerning a Settlement Agreement that is silent as to an arbitration clause. See Exhibit 3. It is noteworthy to mention that Judge Myse, the chairperson of the Arbitration Panel had decided *Kimberly*.

135.    "Manifest disregard of the law," in the context of determining whether arbitrators exceeded their powers under the Federal Arbitration Act, so to permit vacatur of the arbitration award, means something more than just an error in the law or the failure on the part of the arbitrators to understand and apply the law; to vacate an arbitration award on this ground, it must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641, C.A.9 (Nev.) (2010).

136.    The Arbitration Panel is guilty of misconduct for its failure to postpone the hearing after the Plaintiffs informed the panel of the Wisconsin authority that prevented the panel from determining its own jurisdiction. The record clearly indicates that the Arbitration Panel

knew of the authority and simply chose to ignore that authority. Therefore the alleged award must be vacated for the Arbitration Panel's manifest disregard of the law.

**XXV.  Arbitration Panel Exceeded Its Power By Failing To Follow Its own Order And By Deciding Issues Not Submitted To Arbitration**

137.   On or about November 16, 2010, Judge Myse entered an Order that specifically detailed the issue before the arbitration panel. See Exhibit 19.  Since Superior failed to file an arbitration demand pursuant to AAA Rule R-4 and R-5, or an amended demand pursuant to AAA Rule R-6 this is the only record of the issue before the Arbitration Panel. The November 16, 2010 order states:

> "*The issue before the arbitration Panel addresses the question as to whether the arbitration proceedings was completed by a stipulated settlement* or whether settlement has failed and the arbitration issues remain before the Panel. The arbitration Panel has jurisdiction over parties & *the issue as to whether the arbitration has been concluded...*"

(Emphasis added)

138.   Based upon the above Order, one can only determine that the Panel was to address whether or not the arbitration was completed, and if arbitration was not completed what issues remain before the Panel.  The Arbitration Panel exceeded its power by not deciding the question as to whether or not the arbitration proceedings were completed, the alleged award fails to address the issue in which the Panel claims was to be decided, thus the Arbitration Panel violated its own order. Moreover, the Arbitration Panel exceeded it power by deciding issues not properly before the Arbitration Panel such as fraudulent inducement by a party, Superior, and by non-parties to the arbitration, Hunton & Williams, LLP and Insight Equity, the award of attorney's fees, cost, and sanctions. None of these issues were contained in a proper arbitration demand, an amended arbitration demand or in the Arbitration Panel's order dated November 16,

2010. Accordingly, the alleged arbitration award must be vacated for the aforementioned reason.

## XXVI. Panel Has No Power To Enter A Judgment and the Court has no Jurisdiction to Confirm the Award

139. An "Arbitrator's award is not self-executing and must be enforced by court which will not enforce it if arbitrator exceeded its power." *Tamari v. Conrad,* 552 F.2d 778 (7th Cir. 1977). The Federal Arbitration Act § 9 provides that "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." Additionally, if the parties did not consent to judicial confirmation of an arbitration award, a court does not have jurisdiction to confirm the award. See *Milk Drivers v. Roberts Dairy,* 294 F.Supp 2d 1050 (S.D.Iowa, 2003). The language in the Federal Arbitration Act "is exclusionary such that a party may apply for confirmation *only* if the parties have made that agreement. *Id* at 1054-1055.

140. An agreement to arbitrate, therefore, without an agreement that the parties consent to the entry of judgment upon an award, is insufficient to allow a court to enter a judgment upon an award. *Varley v. Tarrytown Associates,* 477 F.2d 208, 210, (2nd Cir., Ct. App. 1973). There was no such explicit agreement in *Varley* and therefore the Court held that it could not enter judgment upon the arbitration award. *Id.* Like the parties in *Varley,* the parties in the case at bar had no agreement to arbitrate, let alone allow a court to enter a judgment upon an award. Additionally, even if one assumes that the Original Contract is controlling (which it is not) the language of the Original Contract does not provide that the parties consent to a court entering a

judgment upon an arbitration award.  Simply put, the Arbitration Panel has exceeded its power

by granting a judgment when clearly it had no power to do so.  In fact, its alleged award is

contrary to the language of the Original Contract and the Federal Arbitration Act.  The parties

did not agree that judgment could be entered by a court much less by the Arbitration Panel.[36]

Further, because the parties did not agree that the arbitration award resulting from the arbitration

could be entered by a court as a judgment, the Court does not have jurisdiction to confirm the

award.  Therefore, the alleged award must be vacated.

**XXVII.  AAA and the Arbitration Panel Failed to Properly Serve Notice Of Award**

      141.    Assuming that the Original Contract is controlling (which it is not), the alleged

award must be vacated because the Arbitration Panel and the AAA have exceeded its power by

not properly serving the alleged award pursuant to the terms of the Original Contract and the

AAA Rules.  The Original Contract specifically states that the AAA Rules shall apply.  AAA

Rule R-39 provides that:

> (a) Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, <u>or for the entry of judgment on any award</u> made under these rules may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

> (b) The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by electronic mail (E-mail), or other methods of communication.

---

[36] The parties did not agree to arbitrate, the settlement agreement is silent as to an arbitration clause, therefore the panel had no authority to enter a judgment.

(c) Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

142.  On January 7, 2011 the AAA sent an e-mail with an attached alleged award. Not all the parties were even listed on the e-mail (the email was not sent to Kenin Edwards)[37]. The parties have not agreed that e-mail is proper notification for delivery of an award and none of the parties or their attorneys have received any other notification of the alleged award, which is required by AAA Rule R-39. As such, the award was not served in accordance with the AAA Rules. Therefore the alleged award must be vacated for violating AAA Rule R-39 and the terms of the Original Contract. Because the Panel and the AAA failed to follow the AAA rules in issuing its award, its award must be vacated. See *Choice Hotels Intern., Inc. v. SM Property Management, LLC*, 519 F.3d 200, C.A.4 (Md.) 2008 in which the Fourth Circuit affirmed the vacation of an arbitration award because notice was not provided pursuant to the agreed upon notice procedures and AAA Rule R-39.

## XXIII. The Arbitration Panel Exceeded its Power by Awarding Sanctions in violation of Wis. Stat. § 802.05 Arbitration Panel Violates Wis. Stat. § 802.05

143.  As the Plaintiffs have argued, the Original Contract had a choice of law provision which provided for the Arbitration Panel to apply the laws of Wisconsin exclusively. As such, any award of sanctions must be based in Wisconsin law. And, even though the Arbitration Panel itself recognizes that "the Agreement is silent with respect to the authority of an arbitration panel to award sanctions" (see page 13 of the Award, attached as Exhibit 11), the Arbitration Panel once again empowered itself to act outside the bounds of the Original Contract. In fact, the Panel, in its award, states that sanctions are being awarded in accordance with "Wisconsin law 802.05(3)", see Exhibit 11 at pg. 14. The record reflects then that the Arbitration Panel awarded

---

[37] Kenin Edwards has always appeared pro se in the arbitration proceedings.

sanctions on its own initiative pursuant to Wis. Stat. § 802.05(3)(a)(2). However, sanctions on a court's own initiative *"may not be awarded on the court's initiative unless the court issues its order to show cause* before a voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned." Wis. Stat. § 802.05(3)(a)(2) (Emphasis added) The Arbitration Panel failed to issue its order to show cause in accordance with Wis. Stat. § 802.05(3)(a)(2). Therefore, the alleged award must be vacated.

144. In addition, the Arbitration Panel exceeded its power and manifestly disregarded the law in awarding sanctions without "notice and a reasonable opportunity to respond." Wis. Stat. § 802.05 (3). Prior to awarding sanctions, pursuant to Wisconsin law, the Arbitration Panel was required to provide notice to the Plaintiffs and a reasonable opportunity to respond to the same. The Arbitration Panel never served a notice as required by Wisconsin law therefore the Plaintiffs were not given the opportunity to respond accordingly. The alleged award must be vacated.

145. Additionally, the Arbitration Panel, without a legal basis to do so, awarded punitive damages on a breach of contract claim. The transcript shows that Superior considered the actions of the Plaintiffs to constitute a breach of contract. See Plaintiff's Exhibit 16 attached at page 212:8-12. However, punitive damages, like an award of sanctions, are not available in a claim for breach of contract in Wisconsin. See, *Autumn Grove Joint Venture v. Rachlin, 138 Wis.2d 273,* 405 N.W.2d 759 Wis.App., 1987. Wisconsin courts have consistently held that punitive damages are not recoverable in a breach of contract claim. See, *Id.* The Arbitration Panel had no authority to issue an award in the first place much less an award of sanctions not presented to the Arbitration Panel and one not supported by the record. See *Edward Electric Co. v. Automation, Inc.*, 229 Ill.App.3d, 593 N.E.2d 833, Ill.App. 1 Dist. (1992) in which the Court

held that punitive damages may be awarded only where there is express provision authorizing such relief in arbitration.   Accordingly, the alleged award must be vacated.

## CONCLUSION

For all of the reasons stated herein, the alleged Arbitration Award by the Arbitration Panel in this matter must be vacated, and MDSC respectfully requests reasonable attorney's fees and cost associated with this Motion.

Dated this 4th day of April, 2011

By _____

Carl J. Coleman
FBN 578207, jcoleman@fowlerwhite.com
Mark C. Anderson
FBN 0631922, manderson@fowlerwhite.com
FOWLER WHITE BOGGS P.A.
2235 First Street
Fort Myers, Florida 33901
239-334-7892
239-334-3240 (fax)

Albert Solochek, Esq.
HOWARD, SOLOCHEK, & WEBER, S.C.
Attorneys for Plaintiff
KONICEK & DILLON, P.C.
Daniel F. Konicek
James P. Lynch

P.O. Address:
324 East Wisconsin Avenue, Suite 1100          Daniel F. Konicek
Milwaukee, WI 53202                            James P. Lynch
(414) 272-0760 (phone)                         KONICEK & DILLON, P.C.
(414) 272-7265 (facsimile)                     21 West State Street
alsolochek@hswmke.com-E-Mail                   Phone:  (630) 262-9655